STATE EX REL. BICKFORD, RELATOR, *v.* COOK, STATE
AUDITOR, RESPONDENT.

[Submitted February 13, 1896. Decided February 24, 1896.]

STATE CAPITOL COMMISSION—*Members—Official Character—Compensation.*—Under §§ 2440-2454 of the Political Code, creating and defining the duties of the State Capitol Commission, and providing for the appointment of commissioners by the Governor, by and with the advice of the Senate, who shall give bond and whose term of office shall extend until the completion of the capitol, and who shall each receive a compensation of five dollars a day for each day actually engaged in the performance of his official duties, the commissioners so appointed are officers whose compensation is fixed by law, and, therefore, the claim of a commissioner for services and mileage need not be passed upon by the State Board of Examiners, whose duties, under section 20, article VII, of the constitution, extend to the examination of all claims against the state except the compensation of officers fixed by law.

STATE CAPITOL BUILDING FUND—*Warrants against do not create state debt.*—The State Capitol Building fund, created by the act of March 7, 1895 (Political Code, §§ 2440-2454), is a trust fund, established pursuant to the act of congress, March 2, 1889, granting lands to be disposed of exclusively for the erection of public buildings at the capital, the disbursement of which is not an expenditure of the state within section 12, article XII of the constitution, forbidding appropriations by the legislature, whereby the expenditure of the state, during any fiscal year, shall exceed the total tax then provided by law, and therefore a warrant drawn on such fund in payment of the compensation of a commissioner does not create an indebtedness against the state.

STATE CAPITOL COMMISSIONERS—*Eligibility—Mandamus.*—In a mandamus proceeding by a member of the state capitol commission, to compel the state auditor to draw a warrant on the proper fund in payment of relator's claim for compensation, the question of the eligibility of other members of the board to appointment as commissioners cannot be raised.

OFFICERS—*Validity of acts under color of office.*—The acts of an officer *de facto* in the exercise of the duties of the office are valid so far as the public are concerned, where, though ineligible, he acts under color of a known appointment from competent authority.

ORIGINAL proceeding. Application by member of state capitol commission for mandamus to compel the state auditor to draw a warrant on the state capitol building fund in settlement of relator's claim for compensation. Writ granted.

Statement of the case by the justice delivering the opinion.

Walter M. Bickford prayed for an alternative writ of mandate, commanding the defendant, state auditor, to issue a warrant in payment of the account filed by said Bickford for services rendered by him as a member of the state capitol commission. The relator alleges:

"That under and by virtue of an act of the legislative assembly of the state of Montana, approved March 7, 1895, designated as 'chapter 4, art. 2, of part 3, tit. 5, of the Political Code,' there was created a board to be known as and called the 'State Capitol Commission,' to consist of five members, to wit, the governor and four qualified electors of the state, said members to be appointed by the governor by and with the consent of the senate. That in pursuance of said act the governor of said state did, on the said 7th day of March, 1895, appoint as members of said board Charles K. Cole, of Lewis and Clarke county; Charles F. Lloyd, of Silver Bow county; William K. Floweree, of Teton county, and this affiant, of Missoula county, and said appointments so made as aforesaid were made by and with the advice and consent of the senate, and were approved by said senate, and in all respects in accordance with said law. That thereafter the said persons so appointed filed their oaths of office and bonds as required by law, and entered upon the discharge of the duties of their office as members of said board. That on the 16th day of March, 1895, A. B. Keith was duly elected by said board as its acting secretary, and qualified by filing his bond as required by law. That between the 15th day of March, 1895, and the 19th day of December, 1895, this affiant performed services as a member of said board, expended moneys for traveling expenses and mileage while engaged in the duties of said board, which said services, mileage, and traveling expenses amounted to the sum of $87.90 ; and on the 6th day of November, 1895, this affiant presented an itemized account in duplicate of said per diem, moneys expended for traveling expenses, etc., to the said board, and the same was duly audited, allowed, and approved for the sum of $87.90, and the said audited bill was certified to the state auditor, with vouchers therefor, and this affiant thereupon presented the same to said state auditor, and requested that said auditor issue a warrant drawn upon the state capitol building fund in favor of this affiant for the sum named therein, but that said auditor failed and refused, and still fails and refuses, to issue

said warrant, as he is required to do by the provisions of the said act approved March 7, 1895.''

The auditor, in his return, alleges : ''That he refused because the warrant for the claim presented was not a claim for the salary and compensation of an officer which was fixed by law. That the said claim had not been presented, examined, and approved by the state board of examiners, as required by section 20, art. 7, of the constitution. That at the time said claim was allowed, Charles F. Lloyd, one of the members of said board, was, and now is, adjutant general of the state of Montana, and receives an annual salary of one thousand dollars, and is required to give a bond to said state in the sum of two thousand dollars for the faithful performance of his duties of such office which are inconsistent with the duties which he is required to perform as a member of the state capitol commission. That William K. Floweree, one of the members of that board, was, at the time this bill was allowed, a member of said board, and now is a state senator, duly elected and qualified, and that the said William K. Floweree represents the county of Teton in the state senate of the state of Montana, and that the duties imposed by the constitution and the law upon the said William K. Floweree, senator, as aforesaid, are wholly inconsistent with the duties required of him as a member of the state capitol commission.

''That the said capitol commission has never been legally organized.

''That all moneys derived from the sale of all lands granted to the state for the construction of public buildings are state funds, and are moneys belonging to the state, and that such moneys cannot be drawn out of the state treasury unless claims therefor have been presented to the state board of examiners, and by such board approved. That the appropriation by the legislature of the sum of two hundred and twenty-five thousand dollars for the fiscal year ending December 3, 1895, is largely in excess of the money on hand which has been received from the sale and rental of lands granted to the state for the purpose of constructing public buildings at the state capitol.

''That the moneys received for the rental and sale of the lands granted to the state for the construction of public buildings, and now in the hands of the state treasurer, does not exceed the sum of $6,089.10.

''That warrants issued in accordance with Article II, Chap. IV, Title V, Part III, of the Political Code, are to be drawn and registered the same as other warrants are drawn and registered by the proper officer of the state. Said warrants, when drawn and registered, are state warrants, and create an indebtedness against the state, and the state is liable for the payment of the same. That said lands, and all thereof so granted to the state of Montana for public buildings at the capital of the state, are held in trust for the people of the state of Montana, and that no part or portion of said lands can be disposed of at a price less than ten dollars per acre. That the state has selected, and there have been approved by the secretary of the interior, lands to the amount of 36,164.90 acres for public buildings at the capital of said state, and that, if all of said lands were sold, they would not bring the state the sum of five hundred thousand dollars, which is the appropriation made for the years 1895 and 1896. That said lands so selected by the state and approved by the secretary of the interior are not worth in value the sum of three hundred and sixty thousand dollars, and when sold would not bring or realize in money to the state of Montana the sum of three hundred thousand dollars.'' Respondent further says, upon information and belief, ''that the lands so selected and approved cannot be sold at the rate of ten dollars per acre, and that the appropriation for the years 1895 and 1896, in the sum of five hundred thousand dollars for the erection of a state capitol building at the state capital is wholly in excess of the value of said lands, and that the drawing of warrants in such sum would be illegal, and contrary to law.'' Respondent further says, upon information and belief, ''that such warrants are claims against the state, for which the state of Montana would be responsible for the payment and for the interest thereon, and that he has no authority under the law to draw warrants

in favor of such capitol commission, except the amount now
in the hands of the state treasurer.''

The relator moved to strike out portions of the respond-
ent's answer, and at the same time filed a general demurrer.

*B. P. Carpenter* and *Toole & Wallace*, for Relator.

*Henri J. Haskell*, Attorney General, for Respondent.

HUNT, J.—In order to erect and complete a state capitol,
the legislature, by the act of March 7, 1895, created a board to
be known as the ''State Capitol Commission,'' defining its du-
ties, fixing the compensation of · its members, and prescribing
their terms of service.   Five members compose the commis-
sion, relator being one.   The members are appointed by the
governor, by and with the advice of the senate.   The term of
office is until the completion of the capitol, and the acceptance
thereof by the state.   Each commissioner shall give bond, con-
ditioned for the faithful performance of the duties imposed by
law.   These duties are of a very important nature.   They ex-
act a high degree of intelligence and care due to the public in
the selection of proper architectural designs, plans, and speci-
fications for a statehouse, to cost, when completed, a million
dollars.   The selection of an architect and a superintendent of
construction devolves upon the commission.   All disburse-
ments on account of the construction of the capitol shall be
made pursuant to certificates issued by the board, and all claims
shall be passed upon after careful examination of every item
thereof.

The statute creating the commission contemplated that the
construction of the capitol would last several years; and, in
order that the people may be kept fully advised of how the
commissioners are fulfilling their duties, the secretary of the
board is obliged to prepare full financial reports each year,
which shall be published in two newspapers, and a copy shall be
transmitted to the legislature.   The compensation of each com-
missioner is five dollars a day for each and every day he is ac-
tually engaged in the performance of his official duties.

Clearly, the members of the commission are public agents, with tenure, duration, emolument, powers, and duties under the statute referred to. (*United States* v. *Hartwell*, 6 Wall. 385; Throop, Pub. Off. §§ 3, 4, *seq.;* *Com.* v. *Evans*, 74 Pa. St. 124; *State* v. *Burke*, 8 Wash. 412, 36 Pac. 281.)

Having determined that capitol commissioners are officers, we find their compensation is fixed by the law above referred to, and that the services of the commissioners and their expenses shall be "certified to the state auditor with vouchers therefor, such warrants to be drawn on the state capitol fund." (Political Code, § 2442.) Under section 20, art. VII, of the constitution, the state board of examiners has nothing to do with the compensation of "officers fixed by law." Where the rate of compensation, and the kind of service to be paid for, are established and provided for by statute, and the amount of compensation for every act of service is definitely fixed by law, and the sum to be paid to the officer is out of a particular fund, and is to be ascertained and certified, as in this case, by the board of capitol commissioners, the state board of examiners is not required to pass upon such claim. The computation and allowance of the commissioners' mileage is but an incident to the compensation. It is to be certified to the state auditor, with vouchers and warrants, then to be drawn on the state capitol building fund.

In no event is the compensation of the commissioners, under the law creating the board, a claim against the state. When congress made a grant of land to the state for public buildings at the capital of the state, by act of congress approved February 22, 1889, providing for the admission of the state into the Union, it was enacted that the lands so granted should be held, appropriated, and disposed of exclusively for the purposes mentioned in the act, in such manner as the legislature of the state might provide. The state, by Ordinance No. 1, § 7, has accepted these lands for the purposes specified, and by legislation has provided for the erection of a capitol, exclusively out of moneys from a fund to be created from the disposition of the lands so granted by congress. The state is an agent to

carry out the objects of the donation. The fund created by the statute is a trust fund established by law in pursuance of the act òf congress. It is not a state fund in the sense that moneys realized from taxes, for instance, and in the public treasury, are state funds. Nor is the disbursement of this capitol fund an expenditure of the state, within the meaning of expenditures generally referred to in the constitution.

The restrictions of section 12, art. XII, of the constitution, forbidding appropriations or expenditures by the legislature whereby the expenditures of the state during any fiscal year shall exceed the total tax then provided by law, unless provision is made for levying a special tax, not exceeding the rate allowed by the constitution, are therefore not applicable to this trust fund. The state cannot use the fund created by this act for any purpose except as provided for by the act of congress. The state officers have no control over it, except to carry out the trust relation; and the treaurer is merely an agent for receiving and disbursing the fund under the act of congress, and in manner provided by the law of the state. So, too, the auditor is but one of the agents or subagents designated by the law of the state in the execution of the trust. All this seems very clear to us from the law. It is also in full accord with the decision of the supreme court of Washington, where, under the same act of congress above referred to, a similar grant of lands was made by the United States to that state for state buildings at the state capital, and a like question to this at bar was before the court. (*Allen* v. *Grimes* (Wash.) 37 Pac. 662.) In the execution of the trust no state debt is created, for the law (section 2454, Political Code) especially prohibits the appropriation of any moneys except the funds derived from the sale or rental of lands granted for erecting public buildings at the state capital, and known as the ''State Capitol Building Fund.'' As was said by Justice Stiles in Washington: ''There is, under the law, absolutely no obligation resting upon the state to pay any sum whatever, and those who may receive the auditor's warrants will be limited in their rights to the requirement of the proper officers to perform

their duties as prescribed by the statute." (*Allen* v. *Grimes,* *supra.*)

As no indebtedness against the state can be created by the issuance of warrants drawn against the specific fund, the provisions of section 12, art. XII, of the constitution, restricting the powers of the legislature to create debts within certain limitations, do not obtain. Nor has the board of examiners any duty to perform in passing upon the claims against the capitol fund. The legislature had the power to control the fund and its disposition for the specific purposes for which the lands are granted. It therefore had the right, unless otherwise restricted by the act of congress or the law of the state, to appropriate amounts in anticipation of moneys to be realized from the sales of the lands granted, and by sections 2442, 2454, Political Code, warrants upon such fund may be drawn and registered by the officers mentioned in the statute as agents of the state, whether there are moneys on hand to meet the warrants or not.

We know of no constitutional limitation upon the price for which lands granted by congress to the state may be disposed of for the erection of public buildings at the capital. The limitation created by the enabling act relates to lands granted for educational purposes. Sections 12, 17, and 11 of the act of congress "to provide for the division of Dakota into two states, and to enable the people of * * * Montana * * * to form a state constitution," etc. (section 1, art. XVII. const.), are not pertinent.

The only other material point raised by the answer is the alleged ineligibility of Charles F. Lloyd and William K. Floweree to the office of capitol commissioner. This being a collateral question, it cannot be tried in this proceeding. (*Carland* v. *Custer Co.*, 5 Mont. 579; *Reed* v. *City of Buffalo,* 4 Abb. Dec. 22.) Even if the persons named were ineligible upon principles of policy and justice, the law holds the acts of an officer *de facto* valid, so far as the public are concerned in the exercise of the duties of the office, where he acts under color of a known appointment from competent authority.

(*State* v. *Carroll*, 38 Conn. 449; *Conover* v. *Devlin*, 15 How. Prac. 470.)

The demurrer to the answer is well taken, and must be sustained. The relator is entitled to the relief prayed for, and a writ will be issued accordingly.

*Writ granted.*

PEMBERTON, C. J., and DE WITT, J., concur.