STATE OF MONTANA, ex rel. GEORGE DILDINE, RELATOR, *v.* TIMOTHY E. COLLINS, STATE TREASURER.

[Decided August 2, 1898.]

*States— Claims—Approval by Board of Examiners— University Bond Fund.*

Laws of 1897, page 58, provides for the issuance of bonds to create a fund for the erection of state university buildings, and creates a building commission, who have authority to draw their warrants on the state treasurer for sums due any building contractor, and the state treasurer is required to pay them out of said fund. *Held,* that a warrant drawn by the commission in favor of a contractor need not be passed on by the state board of examiners created by the Constitution, Art. 7, Sec. 20, which provides that no claims against the state shall be passed on by the legislature without first having been approved by the board, since the university bond fund is a trust fund entirely different from one arising from taxation, and is not a state fund over which the board of examiners would have control.

APPLICATION by the state, on the relation of George Dildine, for a writ of mandamus to compel Timothy E. Collins, state treasurer, to pay a certain warrant drawn by the building commission of the state university. Writ granted.

Statement of the case by the justice delivering the opinion.

The petitioner sets forth that a building commission was created pursuant to the provisions of "An act to provide for the erection, completion, furnishing and equipment of buildings for the University of Montana," and that said commission was duly organized; that bonds were issued to the amount of $100,000, secured by the pledge of the lands granted to the state of Montana for university purposes, and that these bonds were sold, and the proceeds arising therefrom were placed in the hands of the treasurer of the state of Montana, as a special fund (Session Laws 1897, page 58); that the commission entered into a contract for the erection, completion and equipment of the buildings, and that a contract was entered into with the petitioner for the construction and completion of two buildings for university purposes; that this contract provided that at least every two weeks the architect should make an estimate of the amount of work done on the buildings, and the amount of materials furnished, and that upon such estimate the building commission should draw its warrant on the state treasurer against said fund; that on the 20th day of April, 1898, the architect made a correct estimate of work and materials furnished, and returned said estimate to the building commission, and the estimate so returned was approved and allowed, and a warrant drawn for 80 per cent. thereof, to wit, $2,817.60; that this warrant was signed by Alfred Cave, as vice president of the commission, and attested by Joseph K. Wood, secretary, and was presented to the respondent for payment, but that the respondent refused to pay the same, and still refuses; and that a writ of mandate should issue, requiring him to pay this warrant. A general demurrer is interposed to this petition for the reason that the petition does not state facts to entitle the petitioner to the issuance of a writ of mandate.

Congress, by an act approved February 18, 1881, granted lands to the territories of Dakota, Montana, Arizona, Idaho and Wyoming for university purposes. The act in question is as follows: "Be it enacted by the senate and house of representatives of the United States of America, in congress as-

sembled, that there be, and are hereby, granted to the territories of Dakota, Montana, Arizona, Idaho and Wyoming, respectively, seventy-two entire sections of the unappropriated public lands within each of said territories, to be immediately selected and withdrawn from sale and located under the direction of the secretary of the interior, and with the approval of the president of the United States, for the use and support of a university in each of said territories when they shall be admitted as states into the Union: provided, that none of said lands shall be sold except at public auction, and after appraisement by a board of commissioners to be appointed by the secretary of the interior; provided further, that none of said lands shall be sold at less than the appraised value, and in no case at less than, two dollars and fifty cents per acre: provided, that the funds derived from the sale of said lands shall be invested in bonds of the United States and deposited with the treasurer of the United States; that no more than one-tenth of said lands shall be offered for sale in any one year; that the money derived from the sale of said lands invested and deposited as hereinbefore set forth, shall constitute a university fund; that no part of said fund shall be expended for university buildings, or the salary of professors or teachers, until the same shall amount to fifty thousand dollars, and then only shall the interest on such fund be used for either of the foregoing purposes until the said fund shall amount to one hundred thousand dollars, when any excess, and the interest thereof, may be used for the proper establishment and support, respectively, of said university.''

Section 14 of the enabling act of 1889 reads as follows: ''That the lands granted to the territories of Dakota and Montana by the act of February 18th, eighteen hundred and eighty-one, entitled 'An act to grant lands to Dakota, Montana, Arizona, Idaho and Wyoming for university purposes,' are hereby vested in the states of South Dakota, North Dakota and Montana, respectively, if such states are admitted into the Union, as provided in this act, to the extent of the full quantity of seventy-two sections to each of said states, and any

portion of said lands that may not have been selected by either
of said territories of Dakota and Montana may be selected by
the respective states aforesaid; but said act of February 18th,
eighteen hundred and eighty-one, shall be so amended as to
provide that none of said lands shall be sold for less than ten
dollars per acre, and the proceeds shall constitute a permanent
fund to be safely invested and held by said states severally,
and the income thereof be used exclusively for university pur-
poses. The schools, colleges and universities provided for in
this act. shall forever remain under the exclusive control of the
said states, respectively."

The legislative assembly of this state, by an act approved
March 4, 1897, provided for the issuance of bonds to the
amount of $100,000 for the erection, completion, furnishing
and equipment of buildings for the University of Montana;
and section 3 of the act provided that all funds realized from
the sales of licenses to cut trees, leasing of lands, or from the
profits arising from the permanent fund to be created as pro-
vided for by section 14 of an act of congress (above referred
to), and by the enabling act, are pledged as security for the
payment of the principal and interest of the bonds issued, and
all revenue or profits derived from the lands or permanent
fund should constitute a fund for the payment of the principal
and interest of the bonds.

Section 4 provided that the state treasurer should keep the
moneys in a separate fund, to be known as the "University
Bond Fund," and out of this fund to pay, subject to the ap-
proval of the state board of examiners, the cost and expense
of issuing the bonds, and the interest on the bonds when due;
and the third subdivision of the section provides that when the
bonds shall become payable they shall be called in, and that,.
in the event sufficient funds do not exist to pay the interest,
the state board of examiners shall, by order, cause warrants
to be issued on the university bond fund for the amount of in-
terest due, and the warrants thus issued shall bear interest at
the rate of 6 per cent. per annum.

Section 6 of the act provided that the moneys derived from

the sale of the bonds should be used to furnish, erect and equip the buildings for the use and benefit of the University of Montana, and should, by the state treasurer, be paid out on the warrants of the building commission of said university, as provided in section 7.

Section 7 is as follows:    ''There is hereby created a building commission to be composed of five persons to be appointed by the governor of the state, no more than two of whom shall be of the same political party, and all residents of the city of Missoula, who shall serve without compensation, whose duty it shall be to contract for the erection and furnishing of suitable buildings for the use and benefit of the University of Montana; the said commission shall have charge and supervision over the construction of said buildings and all things pertaining thereto; and shall have authority from time to time to draw their warrants on the treasurer of the state of Montana for such sum or sums as may be due any contractor or employee engaged in and about the erection of said buildings, which warrants shall be paid by the said state treasurer out of any funds in his hands arising from the sale of bonds provided for in this act.    Said building commission is hereby authorized to employ an architect and such other assistants as it may deem necessary in preparing the plans, specifications and superintending the construction of said building, and the expense thereof shall be paid out of the funds as hereinbefore provided for the erection of said buildings, provided that all architects, superintendents and contractors shall be citizens of the state of Montana.    Said commission shall make report from time to time to the stated meetings of the state board of education of the progress of said work and the expenditures therefor.''

Section 8 reads thus:    ''The state of Montana shall in no wise be held liable for the payment of the bonds herein authorized or interest thereon.''

*Jos. K. Wood,* for Relator.

*C. B. Nolan, Attorney General,* for Respondent.

HUNT, J.—The case submitted presents the question whether, under the act of the legislature (Session Laws 1897, page 58) referred to in the statement of facts, the claim for the warrant drawn in favor of the petitioner ought to have been passed upon by the state board of examiners before the state treasurer was authorized to pay it.

Section 20 of Article 7 of the Constitution is as follows: "The governor, secretary of state and attorney general shall constitute a board of state prison commissioners, which board shall have supervision of all matters connected with the state prisons as may be prescribed by law. They shall constitute a board of examiners, with power to examine all claims against the state, except salaries or compensation of officers fixed by law, and perform such other duties as may be prescribed by law. And no claims against the state, except for salaries and compensation of officers fixed by law, shall be passed upon by the legislative assembly without first having been considered and acted upon by said board."

The statute cited, providing for the erection, completion and equipment of buildings for the university of the state, was passed and approved after the decision of this court in *State* v. *Cook*, 17 Mont. 529, 43 Pac. 928. The legislature are therefore presumed to have acted with full knowledge of the interpretation placed upon a statute of similar import, and whereby the fund created by the sale of bonds secured by pledge of the lands donated to the state by act of congress approved February 22, 1889, entitled "An act to provide for the division of Dakota into two states, and to enable the people of North Dakota, South Dakota, Montana and Washington to form constitutions and state governments, and to be admitted into the Union on an equal footing with the original states and to make donations of public lands to such states," was held to be a trust fund established by law in pursuance of the act of congress, yet not to be a state fund, in the sense that moneys realized from taxes and in the public treasury are state funds. It was held that the state was to be regarded in the light of an agent for the execution of a trust. No state debt

is created, or can be created, under the law, and the people of the state contribute no money to the fund. It is really a donation by the federal government, and is upon a different footing, entirely, from funds arising by taxation, and out of which are built, for instance, reform schools, soldiers' homes, arsenals, penitentiaries and asylums, not included in the enabling act, all of which are state funds, to be disbursed as expenditures of the state, and which are brought fairly within the meaning of the constitutional limitations and restrictions. So that, upon reconsideration of the views expressed in the Cook case, we feel that they must stand as correct.

It is evident, furthermore, that the act of the legislature providing for the erection of the university buildings did not contemplate that claims arising under the term of the contracts for the buildings should be subject to examination or approval by the state board of examiners. Section 7, which created the building commission of five, made it the duty of such commission to contract for the erection and furnishing of suitable buildings, and gave the commission charge and supervision over the construction of such buildings and all things pertaining thereto, with authority from time to time to draw their warrants on the treasurer of the state for moneys due to the contractors or employees, "which warrants shall be paid by the said state treasurer out of any funds in his hands arising from the sale of bonds provided for in this act." In respect to such payments the commission draws its warrants directly, and the treasurer is obliged by law to pay it, without requiring, as a prerequisite to the right of payment, action by the state board of examiners. The purposes of this more direct procedure are not important to consider, but doubtless facility and expedition were considerations which led to the mode adopted. The legislature probably thought, too, that a building commission of five persons appointed by the governor, and residents of Missoula, where the buildings are being erected, who would be always on the ground, would be just as careful in making the donation thoroughly advantageous to the state, and just as vigilant in the execution of the details of

the trust, and as cautious in the allowance of claims, as would be the state board of examiners, sitting at the capital. As a check, too, it is provided that it shall report from time to time to the stated meetings of the state board of education of the progress of the work and the expenditures therefor.

Now, in the matter of certain other payments out of the bond fund, there is a requirement that claims therefor must first be approved by the state board of examiners. The expenses of issuing the bonds, the interest on the bonds, the payment of the bonds, and warrants for interest due, can only be paid after approval by the state board. Such is the explicit provision of the law. But those claims and payments are extraneous from the claims and payments arising and due in connection with the erection and furnishing of the buildings themselves, and are a separate part of the legislative scheme, providing (1) for the issuance and sale of bonds, and the subsequent payments of interest thereon; and (2) for the erection and furnishing of the buildings erected, out of funds realized from the sale of the bonds. Over the former, which will be a matter of fiscal regard for from 20 to 30 years, the state board has authority; but with the latter, which involves the execution of duties which may be ended within a comparatively few years, the board has nothing to do, either under the law or the constitution. It follows that relator's claim is not a claim against the state, and that the duty of the treasurer is to pay it. The demurrer is overruled. Let the writ issue as prayed for.

*Writ granted.*

PEMBERTON, C. J., absent.   PIGOTT, J., concurs.