STATE EX REL. BUCKNER, RESPONDENT, *v.* MAYOR OF BUTTE, APPELLANT.

(No. 2,838.)

(Submitted May 25, 1910.   Decided June 8, 1910.)

[109 Pac. 710.]

*Cities and Towns—Police Department—Metropolitan Police Law—Examining and Trial Board—Offices—Vacancy—De Facto Officers—Validity of Acts.*

Cities and Towns—Metropolitan Police Law—Examining and Trial Board—Creation of Office.
    1.  In cities of the first class the office of member of the Examining and Trial Board of the police department is created by the Metropolitan Police Law (Revised Codes, section 3304), which commands, in effect, that there shall be such a board; hence the contention that there was no such office until the mayor had nominated its members and the council had confirmed them was without merit.
Offices—Vacancies.
    2.  An office newly created becomes *ipso facto* vacant in its creation.
Cities and Towns—Police Department—*De Facto* Officers—Validity of Acts.
    3.  Where the mayor of a city of the first class had appointed three residents to constitute the Examining and Trial Board of the police department created by section 3307, Revised Codes, such persons, having qualified, were *de facto* officers whose official acts were legal notwithstanding the city council repeatedly refused to confirm them.

*Appeal from District Court, Silver Bow County; John B. Mc-Clernan, Judge.*

MANDAMUS by the state, on the relation of William J. Buckner, against the mayor of the city of Butte, Charles P. Nevin, incumbent, to compel the reinstatement of relator as captain of police. From a judgment awarding a peremptory writ and from an order denying a new trial, defendant appeals. Affirmed.

In behalf of Appellant, there was a brief by *Mr. Edwin M. Lamb, Mr. John R. Boarman,* and *Mr. N. A. Rotering. Mr. Boarman* argued the cause orally.

The exercise of the power to appoint officers must pursue the mode prescribed by the statute conferring the power. (23 Am. & Eng. Ency. of Law, 2d ed., p. 344; *Ward* v. *Cook,* 78 Ill. App. 111; *People* v. *Hall,* 104 N. Y. 170, 10 N. E. 135; *State* v. *Peelle,* 124 Ind. 515, 24 N. E. 440, 8 L. R. A. 228.) Where the appointing officer or body is authorized to make the appointment only with the consent of some other body, there can be no appointment until such consent has been given. (23 Am. & Eng. Ency. of Law, 2d ed., 346; *People* v. *Bissell,* 49 Cal. 411; *State ex rel. Breeden* v. *Sheets,* 26 Utah, 105, 72 Pac. 335; *Watkins* v. *Watkins,* 2 Md. 341; *Dyer* v. *Bayne,* 54 Md. 90; *Commonwealth* v. *Collins,* 8 Watts (Pa.), 331; *Commonwealth* v. *Allen,* 128 Mass. 308.) Where, as in this case, the appointment is made as the result of the nomination by one authority and confirmation by another, the appointment is not complete until the action of all bodies concerned has been had. (29 Cyc. 1372; *County Commrs. of Calvert Co.* v. *Hellen,* 72 Md. 603, 20 Atl. 130; *Merrill* v. *Garrett Co.,* 70 Md. 269, 16 Atl. 723; *Howerton* v. *Tate,* 68 N. C. 546; *In re Marshalship for Southern Dist.,* 20 Fed. 379; Abbott's Municipal Law, p. 1476; Mechem on Public Offices, sec. 114; *People* v. *Cazneau,* 20 Cal. 507; *People* v. *Molyneaux,* 40 N. Y. 115.)

In *Norton* v. *Shelby County,* 118 U. S. 425, Mr. Justice Field announces it as the doctrine that there can be no such thing as a *de facto* officer except when he is the incumbent of a *de jure*

office.   (See, also, 29 Cyc. 1391; *Reddy* v. *Tinkum,* 60 Cal. 458;
*People* v. *Knopf,* 183 Ill. 410, 56 N. E. 155; *Ward* v. *Cook,* 78
Ill. App. 111; *Decorah* v. *Bullis,* 25 Iowa, 12; *In re Hinkle,* 31
Kan. 712, 3 Pac. 531; *Hildreth* v. *McIntyre,* 1 J. J. Marsh. 206,
19 Am. Dec. 61; *State* v. *McFarland,* 25 La. Ann. 547; *Carleton*
v. *People,* 10 Mich. 250; *State* v. *O'Brien,* 68 Mo. 153; *In re
Quinn,* 152 N. Y. 89, 46 N. E. 175.)

The mere possession of an office is not sufficient to make the
incumbent a *de facto* officer.   Either he must have color of title,
or his possession must be acquiesced in by the public.   (29 Cyc.
1392; *Buck* v. *Hawley,* 129 Iowa, 406, 105 N. W. 688; *Woods* v.
*Bristol,* 84 Me. 358, 24 Atl. 865; *Olson* v. *Trego Co.,* 8 Kan. App.
414, 54 Pac. 805; *Hugg* v. *Ivins,* 59 N. J. L. 139, 36 Atl. 685;
*People ex rel. Falk* v. *Dike,* 37 Misc. Rep. 401, 75 N. Y. Supp.
801; *Baldwin* v. *Nesmyth,* 33 App. Div. 634, 56 N. Y. Supp. 318;
*State* v. *Taylor,* 108 N. C. 196, 23 Am. St. Rep. 51, 12 S. E. 1005,
12 L. R. A. 202.)

*Messrs. Kirk, Bourquin & Kirk,* and *Mr. W. E. Carroll,* sub-
mitted a brief in behalf of Respondent.   *Mr. George M. Bour-
quin* argued the cause orally.

*De facto* officers are those in actual possession and discharging
the duties of an office, under color of title or by public acqui-
escence.   Color of title comes from an appointment, however
irregular or made by incompetent authority, or by part only of
a number whose joint action is necessary to make a legal appoint-
ment.   (8 Ency. of Law (2), 790; 29 Cyc. 1390 *et seq.; People*
v. *Roberts,* 6 Cal. 214; *State* v. *Carroll,* 38 Conn. 449, 9 Am.
Rep. 409.)

The legislators must have understood that upon the Metro-
politan Police Act becoming law, the offices of members of such
board existed ready for appointees to be named to fill them, for
it authorized the mayor to name them.   In this, the case is very
like *Merchants' Nat. Bank* v. *McKinney,* 2 S. D. 106, 48 N. W.
845.   That a vacancy existed immediately upon the law going

into effect is not disputed. (*In re Fourth Judicial District,* 4 Wyo. 133, 32 Pac. 850.)

Where an Act provides that the executive shall appoint an officer, with the advice of the legislative body, the officer is thereby created, though the Act nowhere so declares. (*People* v. *Addison,* 10 Cal. 7.) Where a valid law provides for the creation of a corporate body, that body, however irregularly organized under the law, in exercise of the franchise thereof, is such body *de facto.* (*Tulare etc. Co.* v. *Shepard,* 185 U. S. 1, 22 Sup. Ct. 531, 46 L. Ed. 780.)

MR. JUSTICE SMITH delivered the opinion of the court.

On May 6, 1907, the so-called "Metropolitan Police Law" (Article VI, Chapter III, sections 3304–3317, Revised Codes [Chapter 136, Laws 10th Leg. Sess.]) went into force and effect. On May 8, 1907, the Honorable Joseph Corby, then mayor of Butte, a city of the first class, "nominated and appointed," by a writing filed in the office of the city clerk, as members of the Examining and Trial Board of that city, Messrs. George C. Fitschen, Thomas Driscoll and Harry Blumkin, who each took the oath and assumed to enter upon the exercise of the duties of his office. Subsequently Fitschen died, and Harry Sultzer was nominated in his place. As Sultzer's status is the same as was that of his predecessor, we shall not differentiate between the two in our consideration of the case, but shall treat the board as originally constituted.

On May 13, 1907, the Examining and Trial Board notified the mayor in writing that the relator had been examined and placed upon the eligible list of applicants for appointment to the police department, and, further, that he had been examined by the board as an applicant for the position of captain of police. On the same day the mayor in writing "appointed" the relator as captain of police and notified the board, also in writing, that he had made such appointment. The relator on the same day filed his bond and oath of office. On May 22, 1907, according to the records of the city council, the mayor presented to the council

the "appointment" of Messrs. Fitschen, Driscoll and Blumkin
as members of the Examining and Trial Board, but the appoint-
ment or nomination, as the case may be, was not confirmed, and,
although the same nominations were presented to the council at
every meeting thereof, save two, during the two years of Mayor
Corby's incumbency of the office of mayor, the same were never
consented to by the council.   However, the members of the board
were regularly renominated by the mayor after each rejection
of their names by the council, and immediately qualified by filing
new oaths.   No other names were ever presented to the council
for these offices by Mayor Corby, and no other persons ever
assumed to act as members of the board.   The so-called board
held open sessions in the council chamber at the city hall, and
numerous applicants for places on the police force were examined
by them.   Fifty-seven members of the police force took the
examination before the board, and all recognized the board as
the Examining and Trial Board of the city of Butte.   It was
admitted at the trial that Messrs. Fitschen, Driscoll and Blumkin
duly organized themselves into a board, adopted rules and regula-
tions, and from time to time throughout Mayor Corby's adminis-
tration held meetings, examined applicants, and assumed to act
as an Examining and Trial Board, and that during all of their
incumbency they were not disturbed therein by any rival claim-
ants to the office.   After serving a probationary term of more
than six months, the relator was on the sixteenth day of April,
1909, "nominated and appointed" by the mayor, in writing, as
a member of the police department to serve as captain of
police "during good behavior or until by age or disease he
becomes permanently incapacitated to discharge his duties as
such."   He actually performed the duties of captain of police
until May 20, 1909.

On May 3, 1909, the Honorable Charles P. Nevin became the
mayor of Butte.   On May 19, 1909, charges were filed against
the relator, and he was suspended from office by Mayor Nevin
until the charges were disposed of.   The charges were sustained
by an Examining and Trial Board, theretofore nominated by

Mayor Nevin, and confirmed by the council, but were afterward nullified and set aside by the district court of Silver Bow county. After the judgment of the court had been entered and a copy thereof served upon the mayor, the relator demanded reinstatement as captain of police. In the meantime the mayor had nominated one Norton to that office, and the nomination had been concurred in by the city council. He accordingly refused to reinstate the relator, and refused to permit his name to remain upon the pay-roll of the department. The object of this proceeding is to compel the appellant, as mayor, "to admit the relator to the said office of captain of police," and to recover damages in the sum of $500. The district court of Silver Bow county entered a judgment awarding to relator a peremptory writ of mandate directing his reinstatement as captain of police, without damages. From that judgment and an order denying a new trial, an appeal has been perfected.

1. It is contended by counsel for the respondents that by virtue of the foregoing facts the gentlemen appointed by Mayor Corby as members of the Examining and Trial Board constituted a *de facto* board, and as such their acts cannot be successfully questioned in this proceeding. It is claimed that they were in actual possession, discharging the duties of the office, under color of title and by public acquiescence.

The law provides that there shall be in every city and town of this state a police department, which shall be organized, managed and controlled as in the Act provided. (Revised Codes, sec. 3304.) Also, that in cities of the first class the mayor shall nominate, and, with the consent of the council, appoint three residents of such city, who shall constitute a board to be known by the name of the "Examining and Trial Board of the Police Department." The council of any town or city, other than a city of the first class, may provide by ordinance for such a board in such town or city. (Revised Codes, sec. 3307.) It will therefore be observed that as to cities of the first class the law is mandatory, and, as to other cities and towns, it is permissive only. When this law went into effect, it undoubtedly became

the duty of the mayor of every city of the first class to appoint an Examining and Trial Board. Every city in this state must have a police department. We know that the city of Butte has had such a department for years. It was admitted at the hearing in this court that the ordinances of the city relating to the organization of the police department provide for an office designated as that of captain of police. When the Act in question went into effect, the city of Butte had a police department, one of the offices of which was that of captain of police.

It is most earnestly contended by the learned counsel for the appellant that the office of member of the Examining and Trial Board has no existence until the mayor nominates and the council confirms. Not so. The office in cities of the first class is created by the law itself. It is commanded, in effect, that there shall be such a board. The mayor is required to nominate its members. The language employed has the same force and effect in this statute as the words "there is hereby created" would have. (*People* v. *Addison,* 10 Cal. 1.) The mandatory provision for filling the offices in cities of the first class would be rendered nugatory by a construction of the law which would give to the mayor or council the option of creating or not creating the board. The intention of the legislature in this regard is plainly evidenced by the fact that in cities and towns, other than cities of the first class, it in terms clothed the council with power to exercise its own judgment as to whether or not an Examining and Trial Board shall be created. Therefore the *office* of member of the Examining and Trial Board of the police department of the city of Butte actually existed on May 8, 1907. The office, having been newly created, became *ipso facto* vacant in its creation. (*In re Fourth Judicial District,* 4 Wyo. 133, 32 Pac. 850–854; *State ex rel. Smith* v. *Askew,* 48 Ark. 82, 2 S. W. 349; Mechem's Public Offices and Officers, sec. 132.) "There is no technical nor peculiar meaning to the word 'vacant.' * * * It means empty, unoccupied; as applied to an office, without an incumbent. There is no basis for the distinction that it applies only to offices vacated by death, resignation, or other-

wise. An existing office, without an incumbent, is vacant, whether it be a new one or an old one." (*Stocking* v. *State,* 7 Ind. 326. See, also, Throop on Public Officers, p. 419, sec. 431.)

It was the duty of the mayor within a reasonable time after the vacancies occurred to nominate three qualified citizens to fill the offices. This he did by designating Messrs. Fitschen, Driscoll and Blumkin as his choice for the places. He purported to appoint them to fill the vacant offices. They qualified by taking the oath of office, and proceeded to exercise the duties of their positions. On May 13, 1907, the relator took the examination before this board, and was placed upon the eligible list. He was immediately appointed by the mayor as captain of police, for a probationary period. Nine days later, to-wit, on May 22, the nominations to the Examining and Trial Board were presented to the council, voted upon, and not concurred in. It is now strenuously urged upon this court that all acts of this board were null and void, for the reason that its members had not been confirmed by the council. Mr. Mechem in his treatise, heretofore cited, says at page 60, section 124: "Where the authority to make appointments can be exercised only by and with the consent and approval of the senate or other similar body, its exercise has no effect unless such consent or approval be given." No cases are cited in support of the text; but we are inclined to the opinion that in a general way it correctly states the law. (See 23 Am. & Eng. Ency. of Law, 2d ed., 346; 29 Cyc. 1372.) We shall assume, therefore, for the purposes of this case, that Mayor Corby's nominees were not *de jure* officers. It is contended by the appellant that the mayor is not vested with the power of appointment at all, but only with the right to nominate; and it is argued that without the consent of the council no appointment is made. The mayor's act of selecting the nominees is, however, a most important one, and, when it is concurred in by the council, a *de jure* officer is created. Therefore the mayor's act of nomination becomes a part of the joint act of appointment. Our decision that Messrs. Fitschen,

Driscoll and Blumkin were *de facto* officers, however, incidentally disposes of this argument.

The rights of the people are paramount to those of the mayor and council. They should, of course, be able to agree upon appointments. In order to do this, in the case at bar, one or the other must have given way. Both refused to do so. The council continued to reject the mayor's appointments, and the mayor as industriously reappointed the same men. But counsel say: "The pretended appointment of such persons by the mayor to constitute the members of the Examining and Trial Board the day after their rejection by the city council was a bold usurpation of power on the part of the mayor, and had no warrant in law, and was a patent evasion of the plain requirement of the Act relating to the appointment of an Examining and Trial Board." It is not always easy to determine where the blame lies. Fortunately courts are not called upon to do so. Even though it be conceded that the mayor might have presented other names to the council, such concession does not assist the appellant. Perhaps the council would have refused to confirm anyone who was appointed by Mayor Corby, though new appointments were made at every meeting. Is the law nullified because of such deadlock? Not at all. The persons appointed were *de facto* officers, and as such their acts were not void.

One of the rules of the English common law was to the effect that the acts of one who, although not the holder of a legal office, was actually in possession of it under some color of title or under such conditions as indicated the acquiescence of the public in his action, could not be impeached in any suit to which such person was not a party. Such a person was called a *de facto* officer. This principle has been incorporated into the common law of the United States. (29 Cyc. 1389.) In the case of *People* v. *Roberts,* 6 Cal. 214, it was held that, though the appointment of a sheriff by a county judge was void, yet the acts of such sheriff, as a *de facto* officer, were good. (See, also, *Woodward* v. *Fruitvale Sanitary District,* 99 Cal. 554, 34 Pac. 239.)

The supreme court of Arizona, in *Jeffords* v. *Hine,* 2 Ariz. 162, 11 Pac. 351, said: "The public has an interest in the continuous and unbroken discharge of official duty, and the necessities thereof, and cannot wait to try the title of conflicting claimants to an office. For this reason it has come to be held, so often as to be now settled, that the official acts of the incumbent of an office, with whom alone the public can, under the circumstances, transact business, shall be regarded as legal. The affairs of society could not be carried on in any other way than by treating as valid the official acts of persons *de facto* in office." In *State* v. *Carroll,* 38 Conn. 449, 9 Am. Rep. 409, it was held that the judgment of a judge *de facto* was valid.

This court in the case of *Carland* v. *Commissioners of Custer County,* 5 Mont. 579, 6 Pac. 24, through Mr. Justice Galbraith, said: "Persons in the actual and unobstructed exercise of office must be held to be legal officers except in proceedings where their official character is the issue to be tried as against themselves." This court, also, in *Parks, Petitioner for Writ of Habeas Corpus,* 3 Mont. 426, in an opinion by Mr. Chief Justice Wade, after a review of the authorities, concluded that the acts of a *de facto* police magistrate could not be questioned in a collateral proceeding. (See, also, *State ex rel. Bickford* v. *Cook,* 17 Mont. 529, 43 Pac. 928.)

It is a part of the judicial history of this state that Charles R. Pollard, Esq., was appointed a justice of this court by President Cleveland about the year 1886. He was never confirmed by the senate of the United States; yet Volume 6 of the Montana Reports discloses the fact that he took part in the deliberations of the court. The opinion in the case of *Miles* v. *Edwards,* 6 Mont. 180, 9 Pac. 814, was prepared by him, and no one has ever doubted that his acts as a *de facto* judge were legal.

2. Counsel, however, contend that the selection of the relator as captain of police for a probationary term before the names of the members of the Examining and Trial Board had been submitted to the council invalidated his appointment. We think

there is no force in this suggestion. Messrs. Fitschen, Driscoll and Blumkin were assuming to act officially at the time of his examination, and we think they were *de facto* officers from the moment of their appointment and qualification. We do not regard the fact that the mayor submitted their names to the council as of importance. They would still be *de facto* officers, under the facts in this case, if the mayor had been of opinion that there was no necessity for confirmation, and had therefore entirely withheld their names from the council.

3. Counsel for the appellant insist that incompetent testimony was admitted. We find no prejudicial error in this regard. The facts are mostly of record, and are practically undisputed.

Let the judgment and order of the district court be affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Mr. Justice Holloway concur.