RIDER, PLAINTIFF, *v.* COONEY, GOVERNOR, ET AL., DEFENDANTS.

(No. 7,134.)

(Submitted April 20, 1933.   Decided May 16, 1933.)

[23 Pac. (2d) 261.]

Mr. *S. C. Ford* and Mr. *Ralph L. Arnold,* for Plaintiff, submitted an original and a reply brief; Mr. *Ford* argued the cause orally.

300

Mr. *Raymond T. Nagle,* Attorney General, and Mr. *Jere-miah J. Lynch,* First Assistant Attorney General, for Defendants, submitted a brief; Mr. *Lynch* argued the cause orally.

*Mr. T. B. Weir, Mr. W. H. Hoover, Mr. Rudolph Nelstead, Mr. W. G. Gilbert, Mr. S. P. Wilson* and *Mr. Harry P. Bennett, Amici Curiae,* submitted a brief; *Mr. Weir* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This is an original proceeding, brought against the State Board of Land Commissioners and the commissioner of state lands by the plaintiff, who seeks an injunction against the defendants prohibiting their leasing state lands pursuant to the provisions of Chapter 42 of the Laws of 1933, and section 20 of Chapter 60 of the Laws of 1927. The case is before us on the complaint of plaintiff and the answer of defendants, admitting certain allegations of the complaint and denying others. Under the stipulation of counsel, the facts which were denied by defendants' answer are not before us, and likewise questions raised on such disputed facts are eliminated from our consideration.

The plaintiff is a qualified resident, tax-paying freeholder, and elector of the state. The defendants are the elected constitutional members of the State Board of Land Commissioners and the Commissioner of State Lands and Investments. The federal government granted to the state, for the public schools and various educational institutions, in excess of 5,500,000 acres of land to be sold, the proceeds to be held inviolate as a permanent fund, and the interest from the investment of this fund to be expended in the support of the public schools and other educational institutions. The terms of the grant are found in the Act of Congress approved February 22, 1889 (25 Stat. 676), which Act was amended by Congress and approved May 7, 1932. The terms of the original grant were accepted by the state. (Sec. 7 of Ordinance 1.) The amend-

ment of the grant was accepted by Act of the Twenty-Third Legislative Assembly (Chap. 84, Laws of 1933).

Section 4 of Article XI of the state Constitution provides: "The governor, superintendent of public instruction, secretary of state and attorney general shall constitute the state board of land commissioners, which shall have the direction, control, leasing and sale of the school lands of the state, and the lands granted or which may hereafter be granted for the support and benefit of the various state educational institutions, under such regulations and restrictions as may be prescribed by law."

Section 1 of Article XVII of the same document provides: "All lands of the state * * * shall be held in trust for the people; * * * and none of such land, nor any estate or interest therein, shall ever be disposed of except in pursuance of general laws providing for such disposition, nor unless the full market value of the estate or interest disposed of, to be ascertained in such manner as may be provided by law, be paid or safely secured to the state."

Section 3 of Chapter 42, Laws of 1933, provides: "The minimum annual rental for agricultural purposes shall be 5 per centum of the appraised valuation of such lands but in no case less than fifty cents (50c) per acre. The maximum annual grazing rental for state land shall not exceed fifty dollars ($50.00) per section, except where the leasing price is increased above this sum by competitive bidding. For the purpose of determining the rental price of grazing lands they shall be classified as follows:

"Class 1. Extra good grazing land, Thirty-five Dollars ($35.00) to Fifty Dollars ($50.00).

"Class 2. Good grazing land, well sodded with grass, Thirty Dollars ($30.00).

"Class 3. Fair grazing land, with medium grass, Twenty-five Dollars ($25.00).

"Class 4. Poor grazing land, thinly grassed, Twenty Dollars ($20.00).

"Class 5. Any other grazing land, such amount as may be fixed by said board.

"Valuations for purposes of leasing shall be made from plats, records and information now on file in the office of the Commissioner of State Lands and Investments, by competent persons, qualified for this work."

Section 20 of Chapter 60, Laws of 1927, provides that in all cases where there is only one qualified person offering to lease any tract of state land, the lease must issue at the minimum rental, and, by the amendment of 1933, supra, as specified therein.

Plaintiff contends that the Acts supra are in violation of the constitutional provisions noted above; that unless the defendants are restrained and enjoined they will, pursuant to the provisions of Chapter 42, supra, proceed to lease the public lands of the state at a much lower rental than heretofore received; and that, consequently, there will result for the support of the public schools and the other educational institutions of the state a reduction in revenue which will increase the burden upon the plaintiff and all other taxpayers similarly situated.

Chapter 42 of the Laws of 1933 under its express terms does not attempt to limit the rental for state grazing lands where more than one person has made application to lease a given tract or tracts of land. The legislative Act classifies grazing lands into five classes and determines the rentals to be paid in all cases where only one person is desirous of leasing lands of the state.

It is alleged in the complaint, and denied in the answer, that the schedules of prices found in the Act are much less than the market prices for the leasing of lands for grazing purposes within the state. These allegations are under stipulation of counsel eliminated from our consideration, but we mention them, as it may become necessary for us to consider whether they might be considered in any event.

This court, in the case of *State ex rel. Gravely* v. *Stewart*, 48 Mont. 347, 137 Pac. 854, 855, said: "The grant of

lands for school purposes by the federal government to this state constitutes a trust (*State ex rel. Bickford* v. *Cook,* 17 Mont. 529, 43 Pac. 928; *State ex rel. Dildine* v. *Collins,* 21 Mont. 448, 53 Pac. 1114; *State ex rel. Koch* v. *Barret,* 26 Mont. 62, 66 Pac. 504) ; and the State Board of Land Commissioners, as the instrumentality created to administer that trust, is bound, upon principles that are elementary, to so administer it as to secure the largest measure of legitimate advantage to the beneficiary of it.''

These constitutional provisions are limitations upon the power of disposal by the legislature. (*In re Beck's Estate,* 44 Mont. 561, 121 Pac. 784, 1057; *Newton* v. *Weiler,* 87 Mont. 164, 286 Pac. 133.)

Where a legislative Act is attacked on the ground of its unconstitutionality, the question presented is not whether it is possible to condemn it, but whether it is possible to uphold it, the presumption being in favor of its validity, and it must be upheld unless its unconstitutionality appears beyond a reasonable doubt. (*Herrin* v. *Erickson,* 90 Mont. 259, 2 Pac. (2d) 296; *Martien* v. *Porter,* 68 Mont. 450, 219 Pac. 817; *State ex rel. Diederichs* v. *State Highway Com.,* 89 Mont. 205, 296 Pac. 1033; *Arps* v. *State Highway Com.,* 90 Mont. 152, 300 Pac. 549.)

The public lands of the state may be leased for a period of not in excess of five years. (Sec. 23, Chap. 60, Laws of 1927.) It becomes important to determine whether or not leases of state lands for such period or less, for grazing purposes, is the disposing of an estate or interest therein.

Section 6723, Revised Codes 1921, provides that ''estates in real property, in respect to the duration of their enjoyment, are either: * * * 3. Estates for years.'' This section was amended by Chapter 48 of the Laws of 1931, but the amendment merely added an additional class of estates and in nowise affected the classification of estates for years. An estate for years has been held by this court to be an interest in land. (*Wheeler* v. *McIntyre,* 55 Mont. 295, 175 Pac. 892;

*Williard* v. *Federal Surety Co.,* 91 Mont. 465, 8 Pac. (2d) 633.)

It is contended that even though the leasing of the state lands grants an interest in the land, nevertheless, because at the end of the term the state is re-invested with title and possession, no disposal of the lands is made, and that, therefore, the constitutional prohibition is inapplicable in the circumstances under consideration. It is said that the word "dispose" means "to get rid of, to put out of the way, to finish with, to alienate, to part with." (Webster's Dictionary.) If the constitutional prohibition ran only against disposal of the lands and was silent upon the question of the disposal of an interest or estate in the lands, there would be merit to the contention. The constitutional prohibition, however, is against the disposal of the lands, or an interest or an estate therein. When a lease is granted upon the public lands of the state, an interest or estate in the lands has been alienated, and therefore the leasing of the lands of the state for a term of years is the disposal of an interest or estate in the lands within the provisions of our Constitution.

It is contended that in view of the fact that the Acts of the legislature under consideration apply only to those cases where one applicant is desirous of leasing a tract of land, no market exists, hence there is no market value; and that therefore the provision requiring lands of the state, or an interest therein, to be disposed of at the full market value, does not apply.

"Value" means the price which property could command in the market. By "value," in common parlance, is meant "market value," which is no other than the fair value of property as between one desiring to purchase and another desiring to sell; and the words "value" and "market value" are often used interchangeably, and both as being the equivalent of "actual value" and "salable value." (*James* v. *Speer,* 69 Mont. 100, 220 Pac. 535. See, also, *State* v. *Hoblitt,* 87 Mont. 403, 288 Pac. 181; *State ex rel. Snidow* v. *State Board of Equalization,* 93 Mont. 19, 17 Pac. (2d) 68.)

In the interpretation of Constitutions the cardinal rule to ▮ be observed is that words are presumed to have been employed in their natural, ordinary sense, and are to be taken and understood in such sense, unless the context in which they occur requires that they be assigned a different meaning, or that other provisions on the same subject limit, qualify or enlarge their scope. (*State ex rel. Rowe* v. *Kehoe*, 49 Mont. 582, 144 Pac. 162; *Buffalo Rapids Irr. Dist.* v. *Colleran*, 85 Mont. 466, 279 Pac. 369.) There is nothing in the Constitution to indicate that the expression under consideration was used in a sense other than that expressed by it, as the ordinary per- ▮ son would understand it. The absence of competition in the leasing of any tract of state land is not conclusive evidence that there is no market for the land, but only evidence that in all probability there is no competitive or active demand for the particular tract. Furthermore, property may have a value notwithstanding there is no market for it. (*Durocher* v. *Myers*, 84 Mont. 225, 274 Pac. 1062.)

Since "market value" is synonymous with actual value, the constitutional provision under consideration prohibits the leasing of state lands unless the actual value is paid or secured.

It is urged the legislature is without power to deter- ▮ mine the value of a lease on grazing lands—that such function is executive. The legislative department of our government has plenary power, except so far as it is abridged by the state Constitution or the supreme law of the land; such legislative authority will not be deemed to be circumscribed by mere implication. (*Goodell* v. *Judith Basin County*, 70 Mont. 222, 224 Pac. 1110.)

The constitutional provision, section 1, Article XVII, provides that the market value is "to be ascertained in such manner as may be provided by law." Section 4 of Article XI, provides that the state land board "shall have the direction, control, leasing and sale of the school lands of the state * * * under such regulations and restrictions as may be prescribed by law." The limitation, if any, upon the power of the legislature to determine the market value of grazing

lands must be found in these provisions. Clearly, the power is left with the legislature to enact laws for the regulation and restriction of the leasing of state lands. It must, in adopting regulations for that purpose, provide a system that will secure the market value—that is, the actual value—of these lands for grazing purposes.

The legislature is presumed to act, so far as mere questions of policy are concerned, with full knowledge of the facts upon which its legislation is based, and its conclusions on matters of policy are beyond judicial consideration. (*Chicago, M. & St. P. R. Co.* v. *Tompkins,* 176 U. S. 167, 20 Sup. Ct. 336, 44 L. Ed. 417.) It is for the legislature by regulation and restriction to declare the policy to be pursued in determining the market value of leases on the grazing lands of the state, and any policy which correctly determines this value is within the constitutional provision.

It is urged that the classification of lands based on the amount of grass which they produce, is an improper method of arriving at the actual market value of leases on the same. It is said that one of several important factors in arriving at such valuation is thereby disregarded, namely, the distance from market. This classification, however, is a subclassification of lands valuable only for grazing purposes. The lands of the state are classified generally into four classes. (Sec. 1, Art. XVII, Constitution.) Distance from market is an important factor in determining the valuation of agricultural lands (which are not here under consideration), but is of comparatively little importance in determining the value of grazing lands.

Plaintiff relies, in support of this contention, on certain statements found in the opinion of this court in the case of *State ex rel. Schoonover* v. *Stewart,* 89 Mont. 257, 297 Pac. 476. The court there condemned a classification of irrigated lands and lands susceptible of irrigation into one class, at the same valuation, for purposes of taxation. It was there observed that the true value of such lands depended upon many factors, as the existence or lack of an appurtenant water

right, its priority and sufficiency, the nature of the soil, etc. Here the classification is of lands valuable only for grazing; lands otherwise valuable are excluded from this class.

The most important factor in determining the value of grazing lands is that of the amount of pasturage they will afford, which is entirely dependent upon the condition and growth of the grass thereon. Other factors enter into the valuation of leases on grazing lands in certain instances, among which are the existence of water on the land or the proximity of the land to an adequate water supply, their location with reference to forest reserves, etc. But we are not advised as to whether the lands now owned by the state include those wherein these additional factors may be of vital consideration in the determination of their market value for grazing purposes. The members of the legislature, coming, as they do, from every county in the state, could not be without information as to the facts on these subjects. The determination of market value where there is no active competition for the leasing of such lands, by whomsoever it may be made, is at best only a matter of opinion. In such a situation errors in judgment will result in some instances. A perfect determination of the true market value of the use of these grazing lands is therefore impossible in every case.

If any of the grazing lands òf the state have the above-mentioned unusual advantages in location tending to enhance their value, it would follow logically that the demand therefor is likely to become competitive, and, if so, the Acts under consideration by their express terms are inapplicable. If experience has demonstrated the existence of such additional factors and has led to the result of competitive bidding for leases on these lands, then this class of grazing lands might properly be excluded from consideration in devising a plan for the valuation of certain of the grazing lands of the state. We are not informed on this subject and are unable to say that the legislature was not so informed. The classification of the legislature is based on the one always important factor —the amount of pasturage these lands will produce. There-

fore we cannot say that it appears from the pleadings before us beyond a reasonable doubt that the legislative policy of classification now being considered omits any important factor necessary to determine the market value of grazing lands where only one person desires to obtain their use.

We are concerned now, not with whether the policy adopted by the legislature was the best policy that could have been adopted, but only with whether or not under this policy the state receives the full market value for the leasing of its grazing lands. To determine whether or not the state will so realize the market value is a question of fact which is not before this court. The plaintiff in his complaint asserts that the state will not receive the market value; defendants by their answer deny such assertion. Counsel by their stipulation have excluded that question from our consideration as a question of fact.

It is here contended that the general rule is that the constitutionality of a law is not to be determined on a question of fact to be ascertained by the court. Such we concede the general rule to be. (6 R. C. L. 112.) There are, however, certain exceptions to this rule, and sometimes questions of fact may be necessarily involved in a judicial determination as to the constitutionality of the statute, as where the validity of a law relating to the charges of a public service corporation depend upon whether the rates so established amount, under the particular circumstances of a case, to a taking of property without due process of law. (6 R. C. L. 113.) Another illustration: It is within the competency of the legislature to determine when and what property shall be taken for public use. That question is one of policy over which the courts have no supervision. But if, after determining that certain property shall be taken for public use, the legislature proceeds further and declares that only a certain price shall be paid for it, then the owner may contend that his property is taken without due compensation; and the legislative determination of value does not preclude an investigation on that subject in the proper judicial tribunal. (*Chicago, M. & St. P. R. Co.* v. *Tompkins,* supra.)

So in this case the legislature may determine the policy to be followed in the leasing of the state grazing lands, and that question may not be reviewed by the courts. But the question as to whether or not, under the policy adopted by the legislature, the market value for the grazing lands is being received, is a question of fact which may be investigated by a proper tribunal in an appropriate proceeding. It is our intention by this opinion not to in any manner foreclose the judicial investigation of this fact, but only to point out that the contention that it may not be investigated under proper pleadings and in a proper tribunal is without merit.

It is urged that owing to a possible increase in market value of grazing lands to a point in excess of the values fixed in the Act of the legislature, leases then granted would of necessity violate the above constitutional provisions, and, therefore, the familiar rule in this jurisdiction that in certain cases the constitutionality of the law may be tested, not by what has been done, but by what may be done thereunder, is applicable. (*State ex rel. Holliday* v. *O'Leary*, 43 Mont. 157, 115 Pac. 204.) This rule has been followed by this court in a number of cases.

Another rule obtains in this jurisdiction, i. e., that one will not be heard to question the validity of a statute unless his interests have been, or are about to be, prejudicially affected by the operation of the statute. These two rules are discussed and the cases supporting each are collected and harmonized, in the case of *State ex rel. Brooks* v. *Cook*, 84 Mont. 478, 276 Pac. 958, 963. It was said in that case, with reference to the rule sought herein to be invoked, that it "is applicable to all of those cases wherein by strict compliance with the statute the party raising the question of the validity of the statute" would be deprived of a right.

Under the conditions of the pleadings before us, the disputed questions of fact being eliminated, plaintiff is in no position to invoke the foregoing rule. The presumption being that the Act is constitutional, we are compelled to assume for the purpose of this opinion that the state will receive the mar-

ket value for its grazing lands. However, if it should later appear that the valuations determined by the Act of the legislature have been arbitrarily fixed, and amount to a mere subterfuge to enable persons desiring to secure these grazing lands at less than their true value, or that the policy declared by this legislative Act results in a material portion of these lands being leased at a price less than their actual value, then clearly the Act is unconstitutional and cannot stand.

We are therefore unable on the record before us to declare the Act unconstitutional. No reason appears herein why the defendants should be enjoined from proceeding under the provisions of Chapter 42 of the Laws of 1933.

It is accordingly ordered that the complaint of the plaintiff be, and the same is hereby, dismissed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, ANGSTMAN and STEWART concur.