GRUSH ET AL., APPELLANTS, *v.* BISHOP ET AL., RESPONDENTS.

(No. 3,202.)

(Submitted September 9, 1912.  Decided September 16, 1912.)

[126 Pac. 619.]

*Cities and Towns—Police Department—Metropolitan Police Law —Applicability of Statute.*

1. *Held*, that while the Metropolitan Police Law (Rev. Codes, secs. 3304–3317), placing the police departments under civil service rules, is mandatory as to cities of the first class, it is optional with the authorities of the smaller cities and towns whether they shall bring themselves within its provisions.

*Appeal from District Court, Ravalli County; Michael Donlan, a Judge of the Second Judicial District, presiding.*

ACTION by J. J. Grush and another against D. A. Bishop and another.  Judgment for defendants, and plaintiffs appeal.  Reversed and remanded.

*Mr. James D. Taylor,* for Appellants, submitted a brief and argued the cause orally.

In behalf of Respondents, *Mr. C. S. Wagner* submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was instituted to have determined the question whether the plaintiffs or the defendants are entitled, respec-

46 Mont.—7

tively, to the offices of chief of police and night policeman of the city of Hamilton. It was submitted to the district court, pursuant to section 7254, Revised Codes, upon an agreed statement of facts, of which the following is a summary:

Prior to January 3, 1910, Hamilton was a town. On that date it became a city of the third class. An ordinance enacted by the town council on October 1, 1904, contains, among other provisions, the following: "Section 2. In addition to the mayor, alderman, city attorney, treasurer, police magistrate and town marshal as provided by the general laws, the board of aldermen may elect annually policemen, who shall hold office for one year unless removed by the mayor with the consent of the board of aldermen." This is the only ordinance enacted by the town or city council providing for the establishment of a police department. No ordinance has ever been enacted authorizing the appointment of an "examining and trial board," under the provisions of the statute commonly known as the "Police Commission Bill" (Laws 1907, Chap. 136; Rev. Codes, secs. 3304–3317). From year to year since January, 1910, appropriations have been made for salaries for a chief of police and one night policeman. During the year 1908, there being vacancies in these offices, the mayor appointed the defendant Bishop chief of police and the defendant Howey night policeman, and his action was approved by the council. They entered at once upon the discharge of their duties. In May, 1910, they were reappointed by the mayor, and his action was again approved by the council. They were thereafter continued in office until May 6, 1912. The newly elected mayor, who then entered upon a discharge of his office, assuming that their terms had expired, and that their offices were vacant, appointed the plaintiffs Grush and Coulter to succeed them. His action was approved by the council. The defendants, however, refused to surrender their offices, and have since continued to perform the attendant duties, insisting that, by virtue of their appointment subsequent to the enactment of the Police Commission Bill and their possession of the qualifications prescribed thereby, they are entitled to hold

during good behavior, or until they shall become permanently incapacitated by age or disease to discharge their duties. No charges of any kind were made against either of them. The plaintiffs possess the qualifications prescribed by the statute; but, as the city has never established an "examining and trial board," they had, prior to their appointment, not been declared eligible by any board or person, except by inference from their selection by the mayor, with the approval of the council. The plaintiffs contended in the trial court, as they contend here, that while cities of the first class must organize, manage, and control their police departments under the provisions of the Police Commission Bill, and not otherwise, it is entirely discretionary with cities of the other classes and towns whether they shall conform to them; and that since the authorities of the city of Hamilton have continued to proceed under other provisions of statute applicable, notwithstanding the later statute, they became entitled to the office in question immediately upon approval by the council of the action of the mayor in making their appointments. The district court overruled the contention of plaintiffs and rendered judgment in favor of defendants. The plaintiffs have appealed.

Section 3217 of the Revised Codes, after declaring what elective officers cities of the second and third classes shall have, provides: "There may also be appointed by the mayor, with the advice and consent of the council, one city clerk, who is *ex-officio* city assessor, one chief of police, one city attorney, and any other officer necessary to carry out the provisions of this title." Section 3218, which applies to towns, provides: "There may be appointed by the mayor, with the advice and consent of the council, one clerk, who may be *ex-officio* assessor and a member of the council, and one treasurer, who may be *ex-officio* tax collector, and one marshal, who may be *ex-officio* street commissioner, and any other officers necessary, to carry out the provisions of this title.". Under its general legislative power (Rev. Codes, sec. 3259), the council of a city or town may provide for the appointment of as many policemen, including a chief of police in

case of a city, and a marshal in case of a town, as may be necessary to preserve the peace and enforce the ordinances. The ordinance quoted above provides for a marshal and policemen. The term of office is fixed at one year.

Under the provisions of the statute quoted and referred to above, the appointments of the plaintiffs were regularly made by the incoming mayor; and they were entitled to their respective offices, unless it was incumbent upon the city authorities to provide by ordinance for the appointment of police officers under the provisions of the Police Commission Bill. If by its own terms it applies to cities of the second and third classes and to towns, no appointment since its enactment has been valid; and the plaintiffs gained no right through appointment by the mayor. Under section 3 of this Act (Rev. Codes, sec. 3306), all members of a police force in a city falling within its provisions must serve a probationary term of six months before they can become permanent members. Under section 5 (Rev. Codes, sec. 3308), they must, prior to appointment for probationary service, have undergone examination as to their legal, mental, moral and physical qualifications before the examining board provided for in section 4 (Rev. Codes, sec. 3307), and have been found eligible. These requirements the plaintiffs could not meet, because no ordinance had been enacted creating an examining board. In appointing the plaintiffs as he did, the mayor evidently proceeded upon the assumption that the Act, while mandatory by its terms as to cities of the first class, is optional or permissive only as to cities of the other classes and towns. This brings us to the inquiry whether this assumption is correct.

The first section of the Act (Rev. Codes, sec. 3304) declares: "There shall be in every city and town of this state a police department which shall be organized, managed and controlled as in this Act provided." If this broad declaration be taken as indicative of the intention of the legislature, the method of organizing, managing and controlling any municipal police force in this state prescribed in the following sections is exclusive.

An examining board must be created in every city and town; and no person may be appointed a policeman of any grade until he has been found qualified by such a board. It is an essential part of the civil service system contemplated by the Act. But . section 4 is clearly exclusive only as to cities of the first class. It first declares that "in cities of the first class the mayor shall nominate and with the consent of the council appoint  *  *  * 'the Examining and Trial Board,' " *etc.* Later in the same section we find this provision: "The council of any town or city other than a city of the first class may .provide by ordinance for such a board in any such town or city." If the first section is exclusive, the word "may" in section 4 is to be construed as "must," because, if it imports permission only, the creation of the board is left optional with the city or town council; and if the council does not choose to create it the other requirements of the Act cannot be met, because no provision is made elsewhere in the Act by which the fitness of persons to serve as policemen [1] can be ascertained. Upon an examination of the whole Act, however, keeping in mind the purpose had in view by the legislature, *viz.,* to encourage efficiency in the police service in our larger cities, where large numbers of police officers are required, and to withdraw it from direct partisan political control by prohibiting removals, except for cause found, after trial upon charges presented to the board (*State ex rel. Quintin* v. *Edwards,* 40 Mont. 287, 20 Ann. Cas. 239, 106 Pac. 695), we think that the insertion of these provisions, one mandatory and the other permissive in terms, was intended to limit the application of the general provision in the first section, and make it optional with the authorities of the smaller cities and towns, where few police officers are required, whether they should bring themselves within its provisions. It is hardly conceivable that the legislature intended that all small communities with not to exceed 1,000 inhabitants, such as a town, requiring generally not more than one or two policemen to preserve order, should be burdened with the maintenance of an examining board and the expense incident to the performance of the duties assigned to

it. In *State ex rel. Buckner* v. *Mayor of Butte*, 41 Mont. 377, 109 Pac. 710, the scope of the Act was examined. Though the question was not directly involved, it was held that the law is mandatory as to cities of the first class and permissive as to others. For the reasons stated, we think this the better view.

Under this construction, the general law (Rev. Codes, sec. 3217), conferring upon the mayor the power, with the advice and consent of the council, to appoint suitable persons to perform police service under the ordinance of the city or town providing for them, authorized him to appoint the plaintiffs as he did. The result is that the plaintiffs were properly appointed to their respective offices, and are entitled to have judgment accordingly.

It will be observed that the ordinance quoted above, under which plaintiffs were appointed, having been enacted when Hamilton was a town, mentions a town marshal, instead of a chief of police, and provides for the election of the policemen by the council. Counsel have not noticed in their briefs the apparent incongruity between this provision and the section of the statute cited, conferring the power of appointment upon the mayor. For this reason, we have not deemed it necessary to notice this feature of the case, but have chosen to treat the action of the mayor as if taken under the general statute, instead of under the ordinance. Nor do we attach importance to the fact that the ordinance has not been amended so as to provide for the appointment of a chief of police *eo nomine*.

The judgment of the district court is reversed and the cause is remanded, with directions to enter judgment for the plaintiffs.

*Reversed and remanded.*

MR. JUSTICE HOLLOWAY concurs.

MR. JUSTICE SMITH did not hear the argument, and takes no part in the foregoing decision.