[Civil No. 143.   Filed July 9, 1886.]

[S. C. 11 Pac. 351.]

THOMAS J. JEFFORDS, Plaintiff and Appellant, v. CHARLES F. HINE, Defendant and Respondent.

1. PUBLIC LANDS—LAND OFFICE—POWER OF COURT TO REVIEW ACTION OF IN GRANTING PATENT LIMITED—COURT OF EQUITY MAY GRANT RELIEF IN CASES OF FRAUD UPON CONTESTANT OR DEPARTMENT OR MISTAKE OF LAW BY DEPARTMENT.—Where there has been a contest over issuance of patent and the land department has determined that patent shall issue to one of the contestants the courts have no right or power to interfere unless it can be shown that fraud or imposition was practiced upon the complaining contestant, or upon the land department, or that its officers have clearly mistaken the law applicable to the case.

2. SAME—SAME—FINDINGS OF FACT BY DEPARTMENT CONCLUSIVE UPON COURTS.—The land department is a tribunal, appointed by Congress to decide questions like this, and when finally decided by the officers

of that department the decision is conclusive everywhere else, as regards questions of facts.

3. SAME—SAME—FINDING THAT OFFICER IS SUCH DE FACTO IS MIXED FINDING OF LAW AND OF FACT—RECEIVER AS DE FACTO REGISTER—WHAT CONSTITUTES INCUMBENT OFFICER DE FACTO—RIGHT TO OFFICE CANNOT BE TRIED COLLATERALLY—ACTS OF DE FACTO OFFICER VALID.—The question whether Daly, receiver, was the register *de facto* was before the department, and if not purely a question of law or of fact, it was clearly a mixed question of law and fact, and when decided, was at rest under the decisions cited. Where under some designation the receiver undertook to exercise, and did exercise and discharge the duties and powers of register, his absolute legal right to the office cannot be tried in a collateral manner between third parties. Whatever might be said of the acts of a mere intruder, without any claim or color of title, it is well settled that when a person actually obtains an office, with the legal *indicia* of title until ousted, his official acts are as valid as if his title were not disputed.

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Cochise. Affirmed.

The facts are stated in the opinion.

Smith & Campbell, and C. C. Stephens, for Appellant.

Thos. Mitchell, for Respondent.

SHIELDS, C. J.—This controversy as to a right of possession and ownership of a certain mining property in Tombstone mining district, Cochise county. The contention was commenced and continued for years in the land department of the United States, and has finally been transferred to the courts of this territory. It is not deemed necessary or important to refer with particularity in this case to the history of such controversy, so carried on, but simply to state certain well-established facts, which will explain our decision, and show upon what ground it rests.

In November, 1875, the plaintiff undertook to locate, and claims to have done so, the mining property in question. giving thereto the name of the "Bronkow Mine." He had the mine surveyed, and in other things claims to have complied

with the laws relative to the location of mines. While the plaintiff was taking the various steps to procure a patent, and on October 4, 1880, the register of the United States land-office at Tucson was suspended by order of the president of the United States. No successor to such register was regularly appointed by the president until May, 1881, but in the meantime C. E. Daly, who was at that time receiver of public moneys of the local land-office at Tucson, assumed also to act as register of the land-office, claiming authority to do so by a communication or order from the land-office in Washington. The receiver named continued to act as register, and discharged the duties of said office, from the time of the suspension of the register up to November 16, 1880, when the commissioner of the general land-office at Washington informed him that it was not lawful for him to perform the functions and duties of register. When the successor to the suspended register was appointed, plaintiff and his application for patent, and the proofs accompanying same, submitted to the newly-appointed register, who approved the same, and ordered publication to be made, which was done. The plaintiff claims that from thenceforward his proceedings were such as to entitle him to a patent.

The rights of the defendants arise as follows: While Daly was acting as register the defendants, acting upon the theory that plaintiffs had abandoned the property in question, filed in the land-office at Tucson an application for a patent for the same mining claim in question, but by the name of the "Dean Richmond Claim." Daly, acting as said register, and before the receipt by him of the notification that he had no right to act, ordered the publication of the notice of defendants for a patent to said Dean Richmond claim. To this application the plaintiff filed no adverse claim, presumably acting on the belief that Daly was a mere usurper, and without any authority to do anything of the kind whatever as register.

On May 18, 1881, as stated, the successor of the suspended register was appointed, and entered upon his duties, and on that day ordered a publication of the application of the plaintiffs for a patent to the Bronkow mine. August 12, 1881, the defendants filed in the local land-office a motion to set

aside such action as the register in ordering such publica-
tion.  This motion was denied by the register, and the de-
fendants appealed therefrom to the commissioner of the
general land-office at Washington.  On the hearing of this
appeal the commissioner reversed the decision of the reg-
ister of the land-office at Tucson, and ordered that the mo-
tion of the defendants there made, to set aside the order
of the register directing the publication of the plaintiff's
notice of application for a patent to the Bronkow mine, be
granted.  The commissioner seems to have passed fully and
squarely upon all questions then in controversy between
the parties, holding that the Bronkow application, although
first presented, was of no effect *against,* and opposed no bar
to, the reception of the application for the Dean Richmond;
also that the Bronkow application was subsequent to that
of the Dean Richmond; and further decided that
C. E. Daly, when he acted as register, was a *de
facto* officer, and that the publication ordered by him
while acting as register of the local land office was a
legal publication, and that the rights of the plaintiff were
concluded by such publication.  The result was that the de-
fendants, the claimants of the Dean Richmond lode, were
directed by the commissioner of the land-office to complete
their entry.  From this decision the plaintiff appealed in
due time to the secretary of the interior department. The
secretary of the interior, upon the hearing before him, in
all things affirmed the decision of the commissioner of the
land-office, and ordered that the defendants, as such claimants
of the Dean Richmond, should be permitted to complete their
entry, and that a patent issue to them for the Dean Rich-
mond claim, which covered the Bronkow location.  After
such action and decision of the secretary of the interior the
complaint in this case was filed in the district court in and
for Pima county.

The complaint in the case asks a rehearing of the whole
controversy, upon the ground that the land department of
the government erred in its decision, and especially in hold-
ing that the application tendered by the defendants was
proper, and in allowing them to complete their entry.  It is
also said to have been error on the part of the land depart-

ment to hold that Daly was, at the time he took the steps referred to, a *de facto* officer; and also in holding that the Bronkow application was subsequent to that of the Dean Richmond. Other errors are said to have been committed by the land department, but these are the essential ones, and all that require consideration. The complaint prays that a decree be rendered that the complainant is an equitable owner of the land in controversy, and that the defendants be held to be trustees of the legal title for the benefit of the plaintiffs, and that they be required to deed and convey the premises to the plaintiff. A decree was rendered in the court below dismissing the complaint, and appeal has been taken to this court.

It will be seen, at a glance, that we are asked to review the action of the land department of the United States, and, indeed, to reverse and set aside the action of such department. It has been so often and repeatedly held that the courts have no right or power to so interfere in cases of this kind, after the action of the land department, that little else need be done in disposing of this case than to refer to the decisions made by the highest judicial tribunal in the country upon the subject. The questions that we are asked now to look into and decide were examined and passed upon by the land department, and, after such examination, it was decided that the patent to the property should issue to the defendants. The power of the land department to make such a decision is unquestionable. The United States, in thus making a title to the land in question, had a right to determine upon the sufficiency of whatever went to entitle the claimants to the patent actually granted, and the lands named by that conveyance; and, the patent having been granted to the defendants, it cannot be said that such patent was issued improperly, unless it can also be shown that fraud or imposition was practiced upon the plaintiffs, or upon the land department, or that such officers have clearly mistaken the law applicable to the case.

In *Baldwin* v. *Starks*, 107 U. S. 463, 2 Sup. Ct. Rep. 473, the law is clearly stated: "It has been so repeatedly decided in this court, in cases of this character, that the land department is a tribunal, appointed by congress to decide

questions like this, and when finally decided by the officers of that department the decision is conclusive everywhere else, as regards all questions of fact, that it is useless to consider the point further. Where fraud or imposition has been practiced on the party interested, or on the officers of the law, or where these latter have clearly mistaken the law of the case as applicable to the facts, courts of equity may give relief; but they are not authorized to re-examine into a mere question of fact, dependent on conflicting evidence, and to review the weight which those officers attached to such evidence." Of like import are the decisions of *Johnson* v. *Towsley*, 13 Wall. 72; *Shepley* v. *Cowan*, 91 U. S. 330; *Marquez* v. *Frisbie*, 101 U. S. 473; *Quinby* v. *Conlan*, 104 U. S. 420; *Lee* v. *Johnson*, 116 U. S. 48, 6 Sup. Ct. Rep. 249.

The question is very fully discussed in *Quinby* v. *Conlan,* where it was held that rulings upon matters of fact or upon mixed questions of law and fact, which were properly cognizable by the land department, and passed upon by it, are put beyond the interference of the courts; and in this regard it is said: "The proofs offered in compliance with the law are to be presented in the first instance to the officers of the district where the land is situated, and from their decision and appeal lies to the commissioner of the general land-office, and from him to the secretary of the interior. For mere errors of judgment as to the weight of evidence on these subjects by any of the subordinate officers the only remedy is by appeal to his superior of the department. The courts cannot exercise any direct appellate jurisdiction over the decisions of those officers, nor can they reverse or correct them in a collateral proceeding between private parties. * * * It is only when those officers have misconstrued the law applicable to the case as established before the department, and thus have denied to parties rights which, upon a correct construction, would have been conceded to them, or where misrepresentations and fraud have been practiced, necessarily affecting their judgment, that the courts can, in a proper proceeding, interfere, and refuse to give effect to their action. On this subject we have repeatedly, and with emphasis, expressed our opinion, and the matter should be deemed settled."

In *Lee* v. *Johnson*, 116 U. S. 48, 6 Sup. Ct. Rep. 249, it is said: "The patent having been issued by the officers of the land department, to whose supervision and control are intrusted the various proceedings required for the alienation of the public lands, all reasonable presumptions are indulged in support of their action. It cannot be attacked collaterally, but only by a direct proceeding, instituted by the government, or parties acting in its name, and by its authority. If, however, those officers mistake the law applicable to the facts, or misconstrue the statutes, and issue a patent to one not entitled to it, the party wronged can resort to a court of equity to correct the mistake, and compel the transfer of the legal title to him as the true owner. The court, in such case, merely directs that to be done which those officers would have done if no error of law had been committed. The court does not interfere with the title of a patentee, when the alleged mistake relates to a matter of fact, concerning which those officers may have drawn wrong conclusions from the testimony. A judicial inquiry as to the correctness of such conclusions would encroach upon a jurisdiction which congress has developed exclusively upon the department."

But it is alleged, in avoidance of the law here stated, that there was a mistake of law by the officers of the land department in holding that Daly was an officer *de facto*. This question was fully before the department, and received ample consideration, and, if not purely a question of law or of fact, it was clearly a mixed question of law and fact, which, under the decisions cited, must be regarded as at rest by the decision pronounced. We have no doubt, however, that the decision was right in point of law. It is undisputed that, by virtue of some sort of designation by the land department, Daly undertook to exercise, and did exercise and 'discharge, the duties and powers of register. He seems to have been an actual incumbent of the office, and his absolute legal right cannot be tried in this collateral manner, and between third parties. There was ample proof of user on his part, and that he was acting as register, and apparently, for the time being, in full enjoyment of the office. That was enough to make valid his action in this case. Whatever may be said of the acts of a mere intruder, without any claim or color of title,

it is well settled that a person actually obtaining an office, with the legal *indicia* of title, is a legal officer, until ousted, so far as his official acts are concerned, they are as valid as if his title were not disputed. The public have an interest in the continuous and unbroken discharge of official duty, and the necessities thereof, and cannot wait to try the title of conflicting claimants to an office. For this reason it has come to be held, so often as to be now settled, that the official acts of the incumbent of an office, with whom alone the public can, under the circumstances, transact business, shall be regarded as legal. The affairs of society could not be carried on in any other way than by treating as valid the official acts of person *de facto* in office. Upon this point, see the following authorities: *Facey* v. *Fuller,* 13 Mich. 527; *Keator* v. *People,* 32 Mich. 484; *Matter of Corrigan,* 37 Mich. 66; *State* v. *Williams,* 5 Wis. 308, 68 Amer. Dec. 65; *Green* v. *Burke,* 23 Wend. 502; *People* v. *White,* 24 Wend. 529; *Baird* v. *Bank of Washington,* 11 Serg. & R. 413; *Gurley* v. *Hawkins,* 2 Clark, 175; *Druse* v. *Wheeler,* 22 Mich. 439.

The result is that the decree of the court below will be affirmed.