[Civil No. 4518. Filed June 25, 1942.]

[127 Pac. (2d) 134.]

I. PERLE McBRIDE, Petitioner, v. SIDNEY P. OS-BORN, as Governor of the State of Arizona, Respondent.

Messrs. Baker & Whitney, and Mr. Harold E. Whitney, for Petitioner.

Mr. Joe Conway, Attorney General, Mr. Earl Anderson, Special Assistant Attorney General, and Mr. Lynn M. Laney, for Respondent.

McALISTER, J.—In response to the petition of I. Perle McBride, this court issued an alternative writ of *mandamus* directing the governor of the state, Sidney P. Osborn, to sign and deliver to the petitioner a commission evidencing his appointment by the joint action of the governor and the Arizona state senate, as a member of the industrial commission of the state, and that he approve the corporate surety bond executed and submitted by petitioner as such officer, or show cause why he has not done so. In response to this writ the governor made a return in which he set forth the facts governing his action in declining to issue the commission or approve the bond. To this return the

petitioner demurred upon the ground that the matters set forth therein failed to state facts sufficient to constitute a defense to petitioner's complaint. So the question presented is whether the petitioner is, under the facts alleged in the petition and the return, entitled to the relief sought.

The facts are undisputed and may be stated as follows: On March 11, 1941, respondent sent to the president of the state senate, the following letter:

"March
"Eleventh
"1941
"Honorable Paul C. Keefe
"President of the Senate Fifteenth Legislature
"Phoenix, Arizona.
"My dear Mr. President:
"I have today named I. Perle McBride, of Pima County, as a member of the Industrial Commission for the term commencing on the 8th day of January, 1942, and ending on the 8th day of January, 1948, and herewith submit his name to your honorable body for confirmation.
"Sincerely,
"SIDNEY P. OSBORN,
"Governor."

On March 17, 1941, the senate adjourned without taking any action on this communication other than to refer it to appropriate committees.

On December 10, 1941, E. C. Houston, whose term on the industrial commission expired on January 8, 1942, resigned and in compliance with his request the governor accepted his resignation on December 12, 1941, effective that date, but appointed no one to fill the vacancy caused by this resignation for the remainder of his term.

On April 6, 1942, the fifteenth legislature convened in special session and the next day, April 7th, the

governor sent to the senate his letter of that date in which he made this statement:

"In order to clear the situation, and in the interest of harmony, I have at this hour of 9:30 A. M., Tuesday, April 7, 1942, cancelled the appointment of I. Perle McBride to be a member of the Industrial Commission and withdraw his name from consideration by your honorable body, and have today named C. E. Rogers, of Yavapai County, as member of the Industrial Commission for the term expiring on the .8th day of January, 1948, and hereby submit his name to you and ask for confirmation."

On April 13th, following receipt of this communication, the senate's committee on state institutions, wrote the attorney general asking "for an opinion on the question as to whether or not the names of I. P. McBride and Earl Rogers are before the senate for action and if not, which of them, if either of them, are before the senate for action," and under date of April 14, 1942, the attorney general replied stating, among other things, that the governor "has regularly appointed both Mr. McBride and Mr. Rogers to membership on the Industrial Commission; that the names of both men are now properly before the senate; that the senate may legally confirm either and that upon confirmation, that person will have met the necessary legal requirements under the laws of the State of Arizona."

The following day, April 15, 1942, the senate confirmed petitioner's appointment as a member of. the industrial commission, as a successor to Houston, and the same day gave notice of its action to the secretary of state who immediately thereafter notified the governor of the senate's action.

On April 16, 1942, the petitioner requested the governor to sign and deliver to petitioner his commission as a member of the industrial commission and to ap-

prove the corporate surety bond executed by petitioner in the sum of $10,000, but the governor refused to do either upon the ground that in his opinion the petitioner had not been legally appointed or chosen as a member of the industrial commission of Arizona. On the same day the petitioner took his oath of office as a member of the industrial commission and filed it in the office of the secretary of state and also delivered to the state treasurer his corporate surety bond, which the respondent admitted was sufficient in form and as to surety. Following the foregoing acts the petitioner took possession of the office of industrial commissioner theretofore filled by E. T. Houston and has since performed the duties pertaining thereto.

Believing that upon the action of the state senate his appointment was complete and that the issuance of a commission, if one is in fact necessary in case of an appointment for a full term of office, is purely a ministerial act on the part of respondent, especially enjoined upon him as a duty resulting from his office as governor, petitioner seeks by this proceeding to compel the respondent to issue him a commission as a member of the industrial commission for the term beginning January 8, 1942, and ending January 8, 1948, and also approve his bond admittedly sufficient in form and as to surety. The duty of the governor under section 12–106, Arizona Code Annotated 1939, to issue the commission and under section 56–902, Arizona Code Annotated 1939, to approve his bond arose upon his confirmation provided his appointment was completed and became final on April 15, 1942, as a result of the senate's action.

The industrial commission of Arizona was created in 1925, and is "composed of three (3) members to be appointed by the governor, by and with the advice of the senate, for the term of six (6) years, each to be so appointed that the term of one member

expires every two (2) years." Section 56-901, Arizona Code Annotated 1939. This refers to appointments for a full term and not those to fill vacancies, for under section 8, article V, of the state constitution, it is made the duty of the governor, without the advice of the senate, to fill all vacancies when no method of doing so is provided by the constitution or law. The term Houston was filling when the name of petitioner was sent to the senate for confirmation would end January 8, 1942, and the governor's right to make an appointment in March, 1941, for the term beginning January 8, 1942, and submit the name of his appointee to the senate for confirmation, notwithstanding there was then no vacancy and would not be until some ten months following the adjournment of that legislature, is unquestioned since in the absence of a special session an appointment for that term could not be confirmed until the regular session in 1943, and the term of the governor in whom rests the appointing power extended beyond the end of Houston's six years. *Perkins* v. *Hughes,* 53 Ariz. 523, 91 Pac. (2d) 261; *Graham* v. *Lockhart,* 53 Ariz. 531, 91 Pac. (2d) 265. If the appointment had been confirmed by the senate before adjournment of the fifteenth legislature, no question could have arisen as to petitioner's right to the office for the term following the expiration of Houston's, but his right to it now depends, we think, upon the answer to the query whether the governor, after sending petitioner's name to the senate in March, 1941, and asking for confirmation by that body, could, before it took action thereon, cancel the appointment and withdraw the petitioner's name from its consideration. If he could, petitioner's name was not before it after April 7, 1942, and its act confirming on April 15th thereafter was ineffective.

 The governor cancelled the appointment of petitioner and withdrew his name from the senate upon

the theory that he had the right to do so any time before action by that body, while the petitioner's position is that by appointing him and submitting his name to the senate for confirmation, the governor exhausted his power in that respect and could do nothing more concerning it unless and until it was rejected by that body. Several decisions are cited by petitioner in support of this proposition. *McChesney* v. *Sampson*, 232 Ky. 395, 23 S.W.(2d) 584; *People* v. *Mizner,* 7 Cal. 519; *Barrett* v. *Duff,* 114 Kan. 220, 217 Pac. 918; *Speed* v. *Detroit,* 97 Mich. 198, 56 N. W. 570. An examination of these authorities, however, and others of the same tenor, discloses that the appointment in each case had the effect of vesting the appointee with the office, and it is clear that to have held the governor, or other appointing power, could cancel an appointment and withdraw the name of appointee from the consideration of the senate, would have given the governor, or other appointing power, the right to remove from office when that right did not exist under the law, except after a hearing and for cause. If appointment by the governor had had the effect of placing petitioner in the office of industrial commissioner and authorizing him to perform its functions, there could be no question but that the proposition that the governor had exhausted his power in making the appointment and could not withdraw it would apply. But we are unable to see wherein this could have any application at all where the appointment does not have the effect of vesting the appointee with the office. It occurs to us that the language of the court in *McChesney* v. *Sampson, supra* [232 Ky. 395, 23 S. W. (2d) 587], that ''in cases where the nomination must be confirmed before the officer can take the office or exercise any of its functions, the power of removal is not involved and *nominations may be changed at the will of the executive until title to the office is vested.''* states the law

correctly and applies to the facts of this case. And this is true, whether sending the name to the senate for confirmation be treated merely as a nomination or as an appointment, because in neither instance would the act of the governor alone entitle his appointee to the office. The approval of the senate is just as necessary as the action of the executive to complete the appointment and give the appointee any right whatever to take over the office and discharge its duties. In *McCall* v. *Cull*, 51 Ariz. 237, 75 Pac. (2d) 696, 699, the court used the following language in discussing an appointment to the Live Stock Sanitary Board, which the law requires to be done with the advice and consent of the senate:

" . . . Under this statute, his power to appoint is in conjunction with the Senate. The two must concur. The Governor cannot exercise the power alone. He may put into motion this joint power by first appointing the officer, but such appointment is ineffective until and unless ratified or confirmed by the Senate. . . . "

In a note entitled "Reconsideration of appointment, or confirmation of appointment, to office" the annotator makes this statement at page 141 of 89 A. L. R.: "But it would seem clear that, where the appointee is not allowed to take office until the confirmation of his appointment, the appointment is not final until that time," and supports it by quoting the above excerpt from *McChesney* v. *Sampson*, which it will be observed closes with these words: "nominations may be changed at the will of the executive until title to the office is vested." The expression of the court in this case, on the right of an executive to change an appointment before action by the confirming body, is the only one on the question to which we have been cited or our own research disclosed. This right is so clear that it seems to have been questioned very infrequently, if at all. Even in the Sampson case the appointment

by the governor had vested the office in the appointee before confirmation and for this reason it was held the governor could not withdraw it, but the court's view was that where the appointment did not place the appointee in the office, it could be changed at the will of the executive any time before action by the senate.

Since, therefore, the act of the governor appointing petitioner did not authorize him to take over the office and discharge its functions, we are unable to see why the governor could not, for any reason he thought proper change his mind and withdraw petitioner's name from the consideration of the senate any time before that body completed the appointment and made it final and effective by approving it. Withdrawal of petitioner's name under these circumstances neither constituted removal from office nor affected the rights and powers of the senate in the slightest degree. It should not be overlooked that the governor is the officer upon whom the law has placed the duty in the first instance of selecting and appointing an industrial commissioner and that in the performance of this function he may choose any resident of the state eligible under the statute for the position, while the sole duty of the senate in such matters is to confirm or reject the appointment submitted to it. And until it completes the appointment by approval, it has done nothing that would, as petitioner suggests, make withdrawal by the governor dependent upon its consent thereto. The only way that body may prevent such action by the governor is to reject it, in case the appointment is not satisfactory, or approve it before withdrawal in case it is.

The law does not contemplate, and the governor did not proceed on the theory that he could appoint a second person and submit his name to the senate for confirmation while the name of his first appointee was

still before it. There was only one office to fill and if he could submit two names to the senate for it he could submit five, ten, fifteen, or any other number and by so doing say in effect, to that body: "I submit all these names to you for industrial commissioner. Take your choice. Any one of them you approve will be satisfactory to me." Such a course as this would make the senate the sole appointing power contrary to the plain provision of the statute and enable a governor, disposed to do so, to avoid his responsibility.

█ █ Much of respondent's brief is devoted to the proposition that though it be true that the name of petitioner was properly confirmed, it was still necessary that he be issued a commission by the governor to make his appointment final and complete and that it was, even after approval by the senate, within the discretion of that officer whether he issue such commission. While there are a number of decisions sustaining this view upon the theory that the submission of the name to the senate is merely a nomination and not an appointment, there are many decisions to the contrary and it is sufficient to say that this court is committed to the proposition that the governor's power to appoint is in conjunction with the senate and that when the latter has acted favorably upon an appointment made by him, the appointment is final and complete and entitles the appointee to the office. *McCall* v. *Cull, supra; Graham* v. *Lockhart, supra.* We agree with the petitioner that in such a situation the issuance of the commission and the approval of the bond, admittedly sufficient as to amount and sureties, are ministerial acts which could be compelled by *mandamus.*

█ It follows that the action of the senate in voting approval of the appointment of petitioner after his name had been withdrawn from its consideration was

ineffective and hence that his claim to the office is wholly without any lawful basis.

The status of C. E. Rogers in the matter was not mentioned in the pleadings, except insofar as it was necessary in setting forth the facts upon which petitioner relies; nor was it discussed, or even adverted to, in the brief of either party. Hence we have not considered it.

The petition for the writ of *mandamus* is denied.

LOCKWOOD, C. J., and ROSS, J., concur.