[Civil No. 4569.    Filed October 28, 1942.]

[130 Pac. (2d) 271.]

C. EARL ROGERS, Plaintiff v. ANA FROHMILLER,
as State Auditor of Arizona, Defendant.

· Messrs. Laney & Laney, for Plaintiff.

Mr. Joe Conway, Attorney General, and Mr. Earl Anderson, Special Assistant Attorney General, for Defendant.

LOCKWOOD, C. J.—C. Earl Rogers, plaintiff, filed an original petition in *mandamus* in this court against Ana Frohmiller, as state auditor, defendant, requiring her to approve certain claims for salary presented by him.

The facts of the case are not in dispute, and may be stated as follows: Up to December 12, 1941, E. T. Houston was a duly qualified and acting member of the industrial commission of Arizona, for the term which expired on January 8, 1942. On March 11, 1941, the Governor of Arizona submitted to the state senate the nomination of I. Perle McBride as a member of said commission for the term commencing on January 8, 1942. The senate adjourned on March 17, *sine die,* without having taken any action relative to said appointment. On December 10, 1941, Houston sent to the Governor a letter of resignation from his office, which he requested to be accepted forthwith. On December 12 the Governor, in writing, accepted such resignation, but did not appoint nor attempt to appoint any one to fill the vacancy for the unexpired term caused by the resignation of Houston. Nothing further was done in the premises until April 7, 1942, when, the legislature having convened in special session on the previous day, the

Governor withdrew from the consideration of the senate his appointment of McBride as aforesaid, and submitted the appointment of plaintiff herein for the term to which McBride had previously been appointed. On April 15 the senate attempted to confirm the appointment of McBride, made March 11, 1941 as above, but took no action upon the appointment of plaintiff. The Governor immediately refused to issue a commission to McBride or to approve his bond, on the ground he was not legally entitled to the office. The latter, notwithstanding, attempted to exercise the functions of industrial commissioner from April 15 to June 25, 1942, on which last date this court rendered its decision, holding that his claim to office was "wholly without any lawful basis." *McBride* v. *Osborn, ante,* p. 321, 127 Pac. (2d) 134, 138. On July 11, and while the senate was at recess, the Governor again appointed plaintiff to fill the term beginning on January 8, 1942 and expiring January 8, 1948. Plaintiff immediately took his oath of office, filed bond, and attempted to perform the duties and functions of the office. After he had so acted until the next regular semi-monthly payday as fixed by law, he presented to defendant his claim for salary from July 13 to July 16, 1942, which she refused to approve, whereupon plaintiff brought this proceeding.

The sole question for our consideration is whether plaintiff by virtue of the situation aforesaid is and has been since July 11, 1942, a legally chosen, acting and qualified member of the industrial commission. If he is, it is the duty of defendant to approve the claim. If he is not, she acted properly in rejecting it.

There is no question that upon December 10, 1941, E. T. Houston was in all respects the commissioner *de jure* for the term which expired January 8, 1942. On that date he submitted his resignation to the Governor, which the latter accepted in writing on December 12.

What, then, was the situation? Section 12–104, Arizona Code 1939, reads as follows:

"*Term, where not fixed, must hold until successor qualifies.*—Every officer whose term is not fixed by law shall hold at the pleasure of the appointing power. *Every officer must continue to discharge the duties of his office, although his term has expired, until his successor has qualified.* Vacancies occurring in any office, or in the membership of any board or commission, shall be filled only for the unexpired term of such officer or member." (Italics ours.)

We think there can be no question that on December 12, 1941, there was a vacancy existing in the term ending January 8, 1942, which the governor could have filled by appointment without the consent or confirmation of the senate. *McCall* v. *Cull,* 51 Ariz. 237, 75 Pac. (2d) 696; *Graham* v. *Lockhart,* 53 Ariz. 531, 91 Pac. (2d) 265. But under the statute until this vacancy was filled, it was the duty of Houston to continue to discharge the duties of the office. His resignation and the acceptance by the Governor of the resignation would not relieve him from this mandatory duty until his successor was qualified. *Graham* v. *Lockhart, supra; Keen* v. *Featherston,* 29 Tex. Civ. App. 563, 69 S. W. 983; *Badger* v. *United States,* 93 U. S. 599, 3 Otto 599, 23 L. Ed. 991; *United States* v. *Green,* 53 Fed. 769.

The Governor did not exercise his undoubted power before January 8, when the vacancy in Houston's old term ended and a new term began. But on that date, under the statute, Houston was still the *locum tenens* of the new term beginning on January 8, under the obligation of discharging the duties of the office, but subject to being relieved of that obligation any time that a successor had qualified. *Graham* v. *Lockhart, supra.* At that time the appointment of McBride by the Governor had not been revoked, but, as we stated in *McBride* v. *Osborn, supra,* such appointment was wholly

ineffective and conferred no rights upon McBride, unless and until his appointment had been confirmed by the senate.

. On April 7 the Governor withdrew the nomination of McBride. This, we have held, he had the right to do. *McBride* v. *Osborn, supra.* At the same time he submitted to the senate the appointment of plaintiff for the term beginning January 8, 1942 and expiring January 8, 1948. For the reasons stated in the McBride case, this appointment also was of no effect until confirmed by the senate. On July 11 the Governor again made an appointment of plaintiff, stating specifically this time it was for the balance of the unexpired term from January 8, 1942 to January 8, 1948, on the ground that after our decision in *McBride* v. *Osborn, supra,* there was a vacancy existing in such term which he, the Governor, had the power to fill.

The question then is, was the appointment of July 11 authorized by law. If it was, since it is admitted that plaintiff filed his bond and oath of office, Houston was then relieved from the further discharge of his duties, and plaintiff became the commissioner for the unexpired term. If, however, the appointment of plaintiff was not valid and complete, then the obligation still rests on Houston to perform such duties until he is relieved therefrom by the appointment of a legally qualified successor.

The Governor bases his right to make the appointment for the balance of the regular term, which commenced on January 8, 1942, on both constitutional and statutory provisions. Article 5, section 8, Constitution of Arizona, and section 12–404, Arizona Code 1939, read, respectively, as follows:

"*(Governor to fill vacancies.)*—When any office shall, from any cause, become vacant, and no mode shall be provided by the constitution or by law for filling such

vacancy, the governor shall have the power to fill such vacancy by appointment."

"*Vacancy by law.*—An office shall be deemed vacant from and after the happening of either of the following events before the expiration of the term: Death of the incumbent; his insanity, when judicially determined; his resignation, and the lawful acceptance thereof; his removal from office; his ceasing to be an inhabitant of the state or, if the office be local, of the district, county, city, or precinct for which he was chosen or appointed, or within which the duties of his office are required to be discharged; his absence from the state, without permission of the legislature, beyond the period of three (3) consecutive months; his ceasing to discharge the duties of his office for the period of three (3) consecutive months, except when prevented by sickness, or when absent from the state by permission of the legislature; his conviction of a felony, or of any offense involving a violation of his official duties; the failure of the person elected or appointed to such office, to file his official oath or bond within the time prescribed by law; the decision of a competent tribunal declaring void his election or appointment."

By virtue of the constitutional provision the Governor has the right to fill all vacancies in office unless the legislature or the Constitution itself provides otherwise. The legislature, in section 12–404, *supra,* has stated certain circumstances under which vacancies occur. It will be noted on a careful reading of this section that this refers only to cases when there is first an incumbent of the office, and where the vacancy occurs during the term for which he has assumed the office.

It is the argument of plaintiff that a vacancy existed in the term of industrial commissioner from January 8, 1942, to January 8, 1948, because McBride was the incumbent of such office from April 15, 1941, to January 25, 1942, and that this court on the last named date declared void his appointment. This, plaintiff urges, created a vacancy for the unexpired portion of the term

which the Governor was authorized to fill for the balance of the term, since the legislature had not provided for any method other than the one set forth in article 5, section 8, *supra*.

■ We have previously held that when a vacancy occurs on the industrial commission, by reason of the expiration of the term of one of its members, there is one and one only method of filling that particular kind of a vacancy, and that is by the appointment of the Governor and the confirmation of the senate, and that both are necessary in order to fill the office. *Graham* v. *Lockhart, supra*. There was, therefore, a special method provided by law for filling the vacancy which occurred on January 8, 1942, by the expiration of the term of Houston, and that particular method was exclusive. *Graham* v. *Lockhart, supra; McCall v. Cull, supra*. The method for filling vacancies set forth in section 12–404, *supra*, was not applicable to vacancies such as those caused by the expiration of Houston's term. But, it is said, McBride became the incumbent of the new term, and we held his appointment to be void, and, therefore, under the last clause of section 12–404, *supra*, the Governor was authorized to fill such a vacancy. This argument might be of some force if McBride was ever an incumbent of the office either *de jure* or *de facto*. Certainly he was not an officer *de jure*. *McBride* v. *Osborn, supra*. Was he an officer *de facto* or merely an intruder?

■■ Probably the leading case as to what is necessary to make one an officer *de facto* is *State* v. *Carroll*, 38 Conn. 449, 9 Am. Rep. 409. Therein the court said:

"Doubtless color of election or appointment from competent authority is necessary for the protection of an officer *de facto*, when he is assailed directly because of his acts. . . .

"A definition sufficiently accurate and comprehensive to cover the whole ground must, I think, be sub-

stantially as follows: An officer *de facto* is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interests of the public and third persons, where the duties of the office were exercised:

"First, without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be.

"Second, under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent requirement or condition, as to take an oath, give a bond, or the like.

"Third, under color of a known election or appointment, void, because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, *such ineligibility, want of power, or defect being unknown to the public.*

"Fourth, under color of an election or appointment by or pursuant to a public unconstitutional law, before the same is adjudged to be such." (Italics ours.)

Did McBride fall within this definition of an officer *de facto?* Certainly he does not come within the first definition. His right to the office was immediately challenged by the Governor in refusing to issue him a commission or to approve his bond, and, shortly thereafter, by a proceeding in court. It cannot be said that with these facts, notorious as they were to the general public, the circumstances were calculated to induce people, without inquiry, to submit to or invoke his action as an officer *de jure.* He does not fall within the second for the reason his appointment was not known and valid, and no action on his part could have validated it. Nor did he fall within the third definition, for the want of power on the part of the confirming body was raised publicly and immediately in a manner which was notice to the general public that such want of power might exist. Nor was there any question of an appointment

under an unconstitutional act. Section 12–106, Arizona Code 1939, reads as follows:

"*Commissions.*—The governor shall commission in the name and by the authority of the state: Officers elected by the people of the state whose commissions or certificates of election are not otherwise provided for; all officers elected by the legislature; all officers of the militia; all officers appointed by the governor, or by the governor with the advice and consent of the senate. Such commission shall be signed by the governor and attested by the secretary of state under the great seal of the state. The commissions of all other officers, where no special provision is made by law, must be signed by the presiding officer of the body or person making the appointment."

No commission or evidence of an appointment valid on its face was ever issued to McBride at any time, and his right thereto was immediately challenged by the Governor, and the challenge sustained by this court. We conclude that McBride was neither an officer *de facto* nor *de jure,* but a mere intruder into the office, and, therefore, never an *incumbent* within the meaning of section 12–404, *supra.*

Counsel for plaintiff rely greatly upon the case of *State* v. *Moore,* 49 Ariz. 51, 64 Pac. (2d) 809. In that case defendant Moore clearly came within the definition of an officer *de facto.* While it is true we held his election was void, nevertheless he held under color of a known election with a certificate of election issued by the proper authorities, which was valid upon its face, and he had held office unchallenged for many years under circumstances of general acquiescence, such as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be an officer *de jure.* For this reason the case of *State* v. *Moore, supra,* is not in point.

We hold, therefore, that there was no vacancy created by the decision of this court in *McBride* v. *Os-*

*born, supra,* within the meaning of section 12–404, *supra,* which the Governor was entitled to fill without the advice and consent of the senate, and the appointment of plaintiff for the balance of the unexpired term beginning January 8, 1942, was void and of no effect, and under section 12–104, *supra,* the duties of the office are presumed still to be performed by Houston *as a hold-over or locum tenens,* bound by law to perform such duties until his successor is qualified. Does this mean that the only way in which Houston can be relieved of his responsibility is by the appointment by the Governor, and confirmation by the senate, of a full term commissioner? We think not.

An analogous situation arose in the case of *People* v. *Christian* (Wyo.), 123 Pac. (2d) 368, 374. The statute of Wyoming in regard to the appointment of members of the livestock sanitary board was very similar to that of ours in regard to the industrial commission, in that the advice and consent of the senate was required for a full term appointment. One Spaeth had been legally appointed and confirmed as a member of the board. His term expired on April 1, 1939, and one Noblitt was appointed to succeed him in office, but such appointment was not confirmed by the senate. Spaeth, therefore, continued in office as a hold-over under the Wyoming statute which, like ours, required such action, until November 6, 1939, when he died. The question then arose as to what the situation was. The court said:

" . . . That statute provides that in case of death or resignation, the Governor may appoint a successor for the unexpired term. Spaeth had no unexpired term; the term had expired in April, and hence his death gave no opportunity to the Governor to appoint any one for a definite term. We think, however, that it gave him the power to fill the vacancy. If that could not be definitely said to follow from the statute, since that couples the power with an unexpired term, the constitutional provision already quoted would seem to apply,

giving him the power to appoint when no other provision has been made. And we know of no other provision in such case. . . ."

It then continued:

"In view of that, we see no reason why we could not cut the Gordian knot, holding the original appointment to be validated by the subsequent event in so far as proper. We could not, of course, hold it to be validated as to term, since an appointment for the term of six years cannot be made without the advice and consent of the Senate. We have no specific statute covering this situation, but reasoning by analogy makes it perfectly clear. The respondent Noblitt stands in the shoes of the deceased. He has no greater and no less right than the latter. The deceased, being a hold-over, would have had the right, had he lived, to have occupied the office until his successor would have been appointed and qualified as provided by the statute, and no longer. [Citing case] That is the position of the respondent Noblitt. . . ."

We think this reasoning, so far as the right of the Governor to appoint some one to fill the shoes of Houston is concerned, is unanswerable. We think, however, that the specific appointment of plaintiff for the full unexpired term which, as we have said, is void for lack of confirmation, does not carry with it an implied appointment as a hold-over with tenure, and not term, of office to succeed Houston, who has resigned. We cannot assume as a matter of law an appointment by the Governor to fill the full term carries with it an appointment as *locum tenens* with tenure but no term.

We hold, therefore, that plaintiff not having been specifically appointed as a *locum tenens* to fill the shoes of Houston is not *de jure* an industrial commissioner, and is not entitled to a salary for his services as such.

McALISTER and ROSS, JJ., concur.