159 P.3d 557

**In re the Matter of the ESTATE OF Irene Roth DE ESCANDON, Deceased.**

**Estate of Greta Garner, Petitioner–Appellee,**

v.

**Kurt Schindler, personally and as the former Personal Representative of the Estate of Irene Roth de Escandon, Respondent–Appellant.**

**No. 1 CA–CV 06–0258.**

Court of Appeals of Arizona, Division 1, Department E.

June 7, 2007.

Lewis and Roca LLP By Foster Robberson, Karen L. Killion, Susan M. Freeman, Phoenix, Attorneys for Petitioner–Appellee.

Porter Law Firm By Robert S. Porter, Phoenix, Attorneys for Respondent–Appellant.

## OPINION

HALL, Judge.

¶ 1 Commissioner Lindsay Ellis acting as a judge pro tempore of the superior court entered a judgment and order in this contested probate matter. Kurt Schindler contends that the judgment and order are void for lack of jurisdiction because the Maricopa County Board of Supervisors did not approve Commissioner Ellis's appointment as a judge pro tempore as required by Arizona Revised Statutes (A.R.S.) section 12–141 (2003). We conclude that the defect in the appointment process was a procedural error that Schindler waived by not raising before the probate hearing commenced. Therefore, we affirm the judgment and order.

## BACKGROUND

¶ 2 The appointment of judges pro tempore is governed by Article 6, Section 31, of the Arizona Constitution, which states in part:

The Legislature may provide for the appointment of members of the bar having the qualifications provided in § 22 of this article as judges pro tempore of courts inferior to the Supreme Court. When serving, any such person shall have all the judicial powers of a regular elected judge of the court to which he is appointed.

¶ 3 The Legislature provided for appointments by enacting A.R.S. §§ 12–141 through—147 (2003). Section 12–141 provides:

Upon request of the presiding judge of the superior court in any county the chief justice of the state supreme court may appoint judges pro tempore of the superior court for such county in the manner provided by this article and subject to the approval of the board of supervisors of the county.

¶ 4 On December 16, 2004, Chief Justice Charles E. Jones signed an administrative order acknowledging a request from the presiding judge of the Superior Court of Maricopa County for the appointment of court commissioners to serve as judges pro tempore in that court. The order appoints an attached list of commissioners, including Lindsay Ellis, as judges pro tempore "conditioned upon the approval of the Maricopa County Board of Supervisors" (the Board) for the term beginning January 1, 2005 and ending December 31, 2005.

¶ 5 Minutes of the Board's December 15, 2004 meeting state that the Board unanimously approved "the appointment of the attached list of Court Commissioners as Pro Tempore Justice [sic] of the Peace for the period from January 1, 2005 through December 31, 2005 to serve in the various programs in the Justice Courts to reduce trial delay," but do not refer to the approval of the appointment of court commissioners as judges pro tempore in the superior court. Subsequently, at its October 5, 2005 meeting, the Board unanimously "amend[ed] the action taken on December 15, 2004, Nunc Pro Tunc, to approve the appointment of the Court Commissioners as Superior Court Judges Pro Tempore, as well as, Pro Tempore Justices of the Peace for the period from January 1, 2005 through December 31, 2005, to serve in the various programs in the Superior Courts and Justice Courts to reduce trial delay."

¶ 6 The case from which this appeal is taken was tried before Judge Ellis in August 2005 and her decision was rendered by minute entry order on December 2, 2005. The formal judgment against Kurt Schindler and Order re Administration of Estate were entered on March 7, 2006. Schindler timely appealed from the judgment and order. We have jurisdiction over this appeal pursuant to A.R.S. § 12–2101(B) and (J) (2003).

## DISCUSSION

¶ 7 Schindler does not claim error as to the merits of the underlying judgment and order. Instead, he asserts that Judge Ellis lacked authority to adjudicate this matter and the judgment must therefore be vacated as void. Schindler's assertion presents an issue of law that we review de novo. *Am. Fed'n of State, County and Mun. Employees, AFL–CIO Local 2384 v. City of Phoenix*, 213 Ariz. 358, 363, ¶ 15, 142 P.3d 234, 239 (App. 2006).

¶ 8 A commissioner is not authorized to hear a contested probate matter. Ariz. R. Sup.Ct. 96(a)(5). Therefore, Judge Ellis was only authorized to determine the matter if acting in the capacity of a judge pro tempore. Schindler did not object to Judge Ellis's authority to hear and determine this matter before the hearing commenced in August 2005. Indeed, Schindler's counsel (who also represented him in the superior court) acknowledged during oral argument that he first became aware of the issue as he was preparing the appellate brief. Accordingly, the Estate contends that Schindler's appellate objection to Judge Ellis's authority is untimely and therefore waived. *See State v. White*, 160 Ariz. 24, 32, 770 P.2d 328, 336 (1989) (finding that defendant waived his claim that he was entitled to be tried before "a regularly seated superior court judge" rather than a judge pro tempore by failing to make a timely objection). Schindler, on the other hand, asserts that his objection that Judge Ellis acted outside her authority is "jurisdictional" in nature and, accordingly, can be raised for the first time on appeal. *See Cooper v. Commonwealth Title*, 15 Ariz.

App. 560, 562–63, 489 P.2d 1262, 1264–65 (1971) (lack of jurisdiction to render particular judgment can be raised at any time). We construe Schindler's claim as being that, as a result of the irregularities in her appointment to act as a judge pro tempore, Judge Ellis did not have the power to hear and determine contested probate matters.

¶ 9 Whether a party may attack a judgment on direct appeal by contending that the judge before whom the case proceeded was not properly appointed to her position and, if so, under what circumstances, is a question of first impression in Arizona. However, our supreme court has previously applied the "de facto officer" doctrine in determining the validity of acts of other public officers whose appointment or election to the office was legally defective. The leading case in Arizona on de facto public officers is *Rogers v. Frohmiller*, 59 Ariz. 513, 130 P.2d 271 (1942), in which the supreme court adopted the test for a de facto officer from *State v. Carroll*, 38 Conn. 449 (1871). Insofar as relevant here, an officer de facto is:

> one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interests of the public and third persons, where the duties of the office were exercised .... under color of a known election or appointment [that would otherwise be] void by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public.

*Frohmiller*, 59 Ariz. at 521, 130 P.2d at 274 (quoting *Carroll*, 38 Conn. at 471–72).[1] The

---

1. The procedural background in *Frohmiller* is somewhat complex. Briefly, Rogers was nominated by the governor to serve as a member of the industrial commission, but the appointment was not acted on by the senate. Instead, the senate attempted to confirm a previous nominee, McBride, whose nomination had already been withdrawn by the governor. The governor refused to deliver McBride his commission as a member of the industrial commission. 59 Ariz. at 516, 130 P.2d at 272. Rogers attempted to perform the duties of the office but Frohmiller, the state auditor, refused to approve his claim for salary. *Id.* Rogers then filed a mandamus action to compel Frohmiller to pay his salary claim. *Id.* The court, having previously decided that McBride was not legally entitled to office

because his nomination had been withdrawn before the senate voted to confirm him, *McBride v. Osborn*, 59 Ariz. 321, 127 P.2d 134 (1942), discussed whether McBride nonetheless briefly held the office as a de facto incumbent, thereby authorizing the governor to appoint Rogers without the advice and consent of the senate based on a statute that granted the governor the power to fill a vacancy in office that arises when the incumbent's appointment is declared void. 59 Ariz. at 518–20, 130 P.2d at 273–74. The court held that McBride was never a de facto commissioner because the defect in his appointment "was raised publicly and immediately in a manner which was notice to the general public that such

rationale for the doctrine has been aptly explained by the Second Circuit:

> The de facto officer doctrine was developed to protect the public from the chaos and uncertainty that would ensue if actions taken by individuals apparently occupying government offices could later be invalidated by exposing defects in the officials' titles. The doctrine has generally been applied to individuals who are in possession of an office, are performing the duties of the office, and who maintain an appearance of right to the office.

*Equal Employment Opportunity Comm'n v. Sears, Roebuck and Co.,* 650 F.2d 14, 17 (2d Cir.1981) (internal citations omitted).

¶ 10 We do not perceive any reason why the doctrine of de facto officers as explained in *Frohmiller* should not be extended to judges—including judges pro tempore—who occupy office under color of a known appointment that suffers from a procedural defect or irregularity that is unknown to the public. We agree with the observations of the Supreme Court of Alaska that it makes little sense to waste "valuable judicial and private resources" by "[r]equiring relitigation of matters decided by a competent, unbiased judge." *Gates v. City of Tenakee Springs,* 954 P.2d 1035, 1038 (Alaska 1998) (applying de facto officer doctrine to pro tempore judge who did not meet statutory residency requirement). This is particularly so when, as here, the "procedural defects in a judge's qualifications do not affect the fairness of the proceedings." *Id.* (citing *People v. Bowen,* 231 Cal.App.3d 783, 283 Cal.Rptr. 35, 39 (1991)). Furthermore, applying the de facto officer doctrine in the context of judicial officers is appropriate because doing so advances the purpose of the doctrine by "protect[ing] third parties and the public in their dealings with the judicial system." *Id.* at 1038–39. Accordingly, we conclude that the de facto officer doctrine is applicable to judicial officers.

¶ 11 We now address the Estate's claim that Schindler has waived the issue of procedural defects in Judge Ellis's appointment to act as a judge pro tempore by not objecting to her authority to do so in the trial court. The majority of jurisdictions do not permit a party to first raise issues regarding the title or authority of a trial judge on appeal from the judgment entered:

> Where there is original constitutional or statutory authority for an election or appointment of a special, substitute, or pro tem judge, and the record does not affirmatively show that the person in question could not, in any event, legally perform the functions of such a judgeship, it is the general rule that objections to the title or authority of such a judge cannot be first made on appeal.

*See* H.D. Warren, Annotation, *Right of Party, in Course of Litigation, to Challenge Title or Authority of Judge or Person Acting as Judge,* 144 A.L.R. 1207, 1239 (1943) (collecting cases). Under this view, such objections do not implicate the jurisdiction of the court and are subject to preclusion if not raised in the trial court. *See, e.g., Gordy v. State,* 262 Ind. 275, 315 N.E.2d 362, 366 (1974) ("[T]he qualifications of a judge and his authority to act in a given case are not determinative of subject matter jurisdiction. We look instead to the court in which the matter was tried to determine if there is subject matter jurisdiction."); *Wright v. Sports Assoc., Inc.,* 887 S.W.2d 596, 598 (Mo.1994) ("A claimant's failure to timely object to a de facto judge's conduct of the hearing waives any defect regarding the procedural niceties of her appointment."), *overruled on other grounds by Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 224 (Mo.2003); *State v. Piskorowski,* 138 Or.App. 497, 909 P.2d 897, 900 (1996) ("A challenge to the authority of a judge to act in a particular matter does not go to the subject matter jurisdiction of the court. Accordingly, that challenge may not be made for the first time on appeal.").

¶ 12 Schindler does not claim, nor is there any evidence in the record suggesting, that Judge Ellis does not meet the minimum constitutional requirements to qualify as a judge of the superior court that she "be at least thirty years of age, of good moral character and admitted to the practice of law in and a resident of the State for five years next

want of power might exist." *Id.* at 521, 130 P.2d     at 275.

preceding [her] taking office." Ariz. Const. art. 6, § 22. Thus, if her appointment had been timely approved by the Board of Supervisors, she would have been performing her duties—as she had for many years previously—as a fully qualified and properly appointed judge pro tempore. Under these circumstances, the lack of the statutorily required Board approval did not result in a jurisdictional defect in Judge Ellis's authority, but was, at most, a procedural error that resulted in Judge Ellis having de facto authority as a judge pro tempore until the error was rectified by the Board at its October 5 meeting.[2] Therefore, Schindler waived any defect in the appointment process by not objecting to Judge Ellis's authority in the trial court.

¶ 13 Schindler nonetheless claims that the waiver doctrine is inapplicable and the defect is jurisdictional when the error "is not merely technical but embodies a strong policy concerning the proper administration of judicial business" or is one that "relates to basic constitutional protections designed in part for the benefit of litigants." *Glidden Co. v. Zdanok*, 370 U.S. 530, 535–36, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962). For example, in *Nguyen v. United States*, 539 U.S. 69, 78–83, 123 S.Ct. 2130, 156 L.Ed.2d 64 (2003), the Court held that the decisions by an appellate panel composed of two life-tenured Article III judges and one Article IV territorial district court judge violated the "weighty congressional policy concerning the proper organization of the federal courts" that only district court judges holding office "during good be-

havior" could be designated to serve on the federal circuit courts of appeal.[3] In declining to apply the de facto officer doctrine, the Court stated that the "question of judicial authority [was] more fundamental than whether 'some effort has been made to conform with the formal conditions on which [a judge's] particular powers depend.'" *Id.* at 79, 123 S.Ct. 2130 (quoting *Johnson v. Manhattan R. Co.*, 61 F.2d 934, 938 (2d Cir. 1932)).

¶ 14 Instead, according to the Court, the difference between the "merely technical" defects of statutory authority in other "irregular judicial designations" in which the Court found a judge's actions to be valid de facto and the "impermissible panel designations" in *Nguyen* "is therefore the difference between an action which could have been taken, if properly pursued, and one which could never have been taken at all." *Id.*

¶ 15 Applying the *Nguyen* non-waiver exception here, Judge Ellis met the constitutional qualifications to be a superior court judge, and her appointment is "an action which could have been taken, if properly pursued," and "not one which could never have been taken at all." Furthermore, her appointment, although procedurally defective, did not violate either a strong policy concerning the proper administration of judicial business or basic constitutional protections designed in part for the benefit of litigants. Therefore, we find the *Nguyen* exception inapplicable.[4]

2. Based on our disposition of this issue, we need not address Schindler's claim that the authority to issue orders or make amendments nunc pro tunc is an inherent judicial power limited to courts. Nor do we need to decide whether, assuming it had such authority, the Board's retroactive approval at its October 5 meeting was an impermissible application of the nunc pro tunc principle. *See* 46 Am.Jur.2d *Judgments* § 130 (2004) (explaining the function of an entry nunc pro tunc is to correct the record to reflect a prior ruling made in fact but defectively recorded: "[A] nunc pro tunc entry may not be used to accomplish something which ought to have been done but was not done" in the first instance).

3. The Article IV judge selected to serve on the Ninth Circuit panel was the Chief Judge of the District for the Northern Mariana Islands, who is appointed by the President for a ten-year term,

subject to Senate confirmation, "unless sooner removed by the President for good cause." 48 U.S.C. § 1821(b)(1).

4. Based on our determination that the de facto officer doctrine is applicable under the circumstances here, we need not determine whether Schindler can collaterally attack Judge Ellis's authority in this proceeding. *See Jennings v. Woods*, 194 Ariz. 314, 331–32, ¶ 86, 982 P.2d 274, 291–92 (1999) (quoting *Jeffords v. Hine*, 2 Ariz. 162, 168–69, 11 P. 351, 355 (Ariz. Terr.Ct.1886)) ("[I]t is well settled that a person actually obtaining an office, with the legal *indicia* of title, is a legal officer, until ousted, [and] so far as his official acts are concerned, they are as valid as if his title were not disputed."); *cf. Baker v. State*, 377 Md. 567, 833 A.2d 1070, 1084–86 (2003) (holding that a *quo warranto* action is the only available proceeding to chal-

¶ 16 In summary, because Judge Ellis met the minimum constitutional requirements to serve as a superior court judge, the initial failure of the Board to approve her appointment to act as a judge pro tempore was a mere technical defect rather than a jurisdictional error involving the proper administration of judicial business. Therefore, Judge Ellis had de facto authority to serve as a judge pro tempore of the superior court and Schindler waived any claim that she lacked authority to preside over contested probate matters by not objecting before the hearing commenced.

## CONCLUSION

¶ 17 We affirm the judgment and order of the superior court. We grant the Estate's request for attorneys' fees on appeal pursuant to the terms of the 1993 Settlement Agreement between Schindler and Greta Garner in an amount to be determined following its compliance with Rule 21, Arizona Rules of Civil Appellate Procedure.

CONCURRING: ANN A. SCOTT TIMMER and MICHAEL J. BROWN, Judges.

lenge a judge's legal authority to act in a particular case); *Barrett–Smith v. Barrett–Smith,* 110 Wash.App. 87, 38 P.3d 1030, 1033 (2002) (holding that actions of a de facto judge are as valid as those of a de jure judge and "must be submitted to as such until displaced by a regular direct proceeding for that purpose. The proper and exclusive method of determining the right to public office is through a quo warranto proceeding.").